Sinai and Ruth **FRENKEL**, Petitioners,

v.

**DISTRICT OF COLUMBIA RENTAL ACCOMMODATIONS COMMISSION, Respondent.**

**Barbara Strand and Carol Edelson, Intervenors.**

No. 79–893.

District of Columbia Court of Appeals.

Argued April 24, 1980.

Decided July 7, 1981.

Philip M. Musolino, Washington, D. C., with whom Kenneth J. Loewinger, Washington, D. C., was on the brief, for petitioners.

Richard B. Nettler, Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., at the time the brief was filed, were on the brief, for respondent.

Michael Kurs, Law Student, with whom Edward Allen, Supervising Atty., Washington, D. C., was on the brief, for intervenors.

Before KELLY and HARRIS, Associate Judges, and HARRIETT R. TAYLOR, Associate Judge, Superior Court of the District of Columbia.*

TAYLOR, Associate Judge:

Intervenor Carol Edelson filed a petition with the Rental Accommodations Office [RAO] on October 27, 1976, on behalf of herself and intervenor Barbara Strand, her co-tenant [tenants], under the provisions of the Rental Accommodations Act of 1975 [the 1975 Act].[1] Landlord/petitioners Sinai and Ruth Frenkel challenge the August 3, 1979, final decision and order of respondent District of Columbia Rental Accommodations Commission [Commission] on that petition.

The Commission's decision affirmed a December 18, 1978, ruling of the Rent Administrator that the landlords were subject to the 1975 Act, that they had failed to comply

---

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

1. D.C. Law 1–33, 22 DCRR 2490, amended and codified as District of Columbia Rental Accommodations Act of 1975, D.C. Code 1978 Supp., §§ 45–1631 through –1674.

with its requirements, that they were therefore *not* exempted from that Act's rent ceilings and, thus, that they were *not* entitled to all the rent they were charging the tenants.

Petitioners' principal contentions on appeal are that the Commission erred by upholding the Administrator's finding that their rights were defined by the 1975 Act *and* by awarding a refund and treble damages.

We affirm the Commission's findings in all respects, but conclude that the remedy imposed was contrary to law. Accordingly, we remand for a recalculation of damages.

## I

■ On December 19, 1975, the landlords rented their house at 1751 Kilbourne Street, N.W., to the tenants.[2] The lease ran from December 20, 1975, through December 19, 1977, and called for a monthly rent of $525.00—$140.00 above that previously charged for the same accommodation. The tenants' petition underlying this appeal, filed some ten months into the lease term, sought a reduction in the stated rent on the ground that—the landlords having failed to register the housing accommodation pursuant to the 1975 Act[3]—the rent they were charging exceeded that to which they were entitled.[4]

On March 22, 1977, the Administrator upheld the tenants' claim, finding that the property was not registered and was not on record as an exempted rental property and, consequently, that the landlords had been charging and collecting rents in violation of law. He ordered the landlords to appear before the RAO to show cause why the property was not, or should not be, registered.[5]

A hearing was held before the RAO on May 25, 1978. The hearing examiner's proposed decision and order of October 16th[6] was affirmed in part by the Administrator, who ruled on December 18, 1978, that the appropriate rent ceiling was $385.00. He awarded the tenants damages equal to three times the amount overcharged in one month and a refund of the full overcharge for each of the remaining months in issue.[7]

Petitioners appealed the Administrator's decision. Tenants moved to dismiss the appeal on the ground that petitioners had neither complied with the Administrator's decision nor asked that it be stayed.[8] By

---

2. Contrary to petitioners' assertion, Ruth Frenkel *is* a proper party to this action, regardless of which law is applied. D.C.Law 1–33, § 201(h) and all its codifications (*see* D.C.Code 1978 Supp., § 45–1641(h) through D.C.Code 1980 Supp., § 45–1681(i)) defined "landlord" as:

> an owner, *lessor*, sublessor, assignee, or agent of any thereof or other person receiving or entitled to receive rents or benefits for the use of occupancy of any rental unit ... (emphasis added).

To the same effect, *see* Regulations of the District of Columbia Rental Accommodations Commission Pursuant to the District of Columbia Rental Accommodations Act of 1975 (DCRR Special Edition, 9/19/77) [1975 Act Regulations] § 1.10(j).

Each petitioner here signed intervenors' lease, which named "Dr. and Mrs. S. Frenkel" as the "lessors." Thus, both Frenkels were intervenors' landlords within the meaning of the controlling law, and both were therefore properly charged as such in the tenants' petition to the RAO. *See also* the *Assignment* made and signed by both petitioners directly on the lease form when they sold the property in March 1977.

3. Section 202(b) (later amended and codified as D.C.Code 1978 Supp., § 45–1642(b)).

4. Section 204 (later amended and codified as *id.*, § 45–1644).

5. 1975 Act Regulations, *supra* n.2, § 6.

6. An ealier RAO decision and order had been affirmed by the Administrator but reversed by the Commission, which remanded the case for a new hearing.

7. Doctor Frenkel was to pay $2,536.00 for the period December 20, 1975 to March 22, 1977. William Howell, the successor landlord, was made responsible for $1,461.25 for the period March 23, 1977 to January 1978.

Both amounts included interest at $5\frac{1}{4}\%$.

8. *See* the 1975 Act, § 212(g) (later amended and codified as D.C.Code 1978 Supp., § 45–1652(g)); 1975 Act Regulations, *supra* n.2, as amended (DCRR, 11/4/77) § 5.10(d). *Cf.* D.C. Rental Accommodations Commission Emergency Rules (DCRR, 11/17/78) § 214(m)4), (*o*)4)–5).

way of response, petitioners applied for a stay, which was granted on condition that the monies in contention be placed in escrow, to be released only upon a Commission order. Petitioners did not place any money in escrow.[9]

On August 3, 1979, the Commission affirmed the Administrator's decision and ordered the case referred to the Office of the Corporation Counsel for prosecution of petitioners' "willful failure to comply with the Rent Administrator's Decision and the conditions" upon which it had been stayed.[10]

## II

The 1975 Act took effect on November 1, 1975, some seven weeks before the inception of intervenors' lease. So far as relevant here, it was amended twice: in August 1976 [the August Act],[11] before the tenants' petition to the RAO, and in November 1976 [the November Act],[12] shortly thereafter. Finally, on March 16, 1978, the 1975 Act was repealed,[13] to be replaced by the Rental Housing Act of 1977 [the 1977 Act].[14]

Petitioners admit that they failed to register under the 1975 Act, and they have occasionally—though not consistently—conceded that they were subject to that Act's rent control provisions. But they insist that even if they were so subject, they would have been exempted from those provisions—and from the duty to register—by the later enactments, and that they are entitled to have such exemptions applied retroactively.

Petitioners' sometime contentions regarding the 1975 Act are in error, and their alternative reliance on the later enactments is misplaced. We conclude that petitioners were neither exempt from, nor eligible for exemption from, rent control at any relevant time and, that even if, *arguendo*, they were so eligible under any of the enactments subsequent to 1975, petitioners never took the steps necessary to perfect their entitlement.

■ *A.* The 1975 Act only exempted units in buildings which the lessor also occupied.[15] It is undisputed that petitioners did not live in the house they rented to intervenors. Thus, petitioners were not eligible for exemption from rent control under the 1975 Act.

■ The August Act eliminated the requirement of lessor-occupancy, exempting "any rental unit in any housing accommodation of not more than 4 units,"[16] a category concededly covering the premises at issue. But it specifically excluded from such exemption units owned by persons with "any direct or indirect financial interest in any other rental unit or housing accommodation."[17] On June 30, 1976, petitioners bought a multi-unit, multi-story apartment building on Lamont Street, Northwest, and they still owned it in August. Thus, they clearly fell within the category specifically excluded from exemption by the August 1976 amendment.

The November 1976 Act deleted "housing accommodation" from the exclusionary language.[18] Since petitioners still owned the Lamont Street apartment house, however, they were still ineligible for exemption.[19]

---

9. Petitioners took the position that the Commission did not have the authority to issue a conditional stay of the Administrator's decision, and that they therefore were not required to comply with the stated condition.

10. *See* D.C.Code 1979 Supp., § 45–1697.

11. D.C.Act 1–148, 23 DCRR 1673.

12. D.C.Act 1–173, 23 DCRR 3608.

13. *See* D.C.Law 2–54, § 903, 24 DCRR 5334.

14. District of Columbia Rental Housing Act of 1977, D.C.Code 1979 Supp., §§ 45–1681 through –1699.27.

15. Section 202(a)(5) (later amended and codified as D.C.Code 1976 Supp., § 45–1642(b)).

16. Section 2(5) (*see* D.C.Code 1978 Supp., § 45–1642(a)(3)).

17. *Id.* (*see id.*, § 45–1642(a)(3)(B)).

18. Section 2(e).

19. Petitioners already owned one other housing accommodation, at 1721 Kilbourne Street, Northwest, when they leased 1751 Kilbourne to the intervenors. Petitioners insist, however, that 1721 Kilbourne was their own residence

The 1977 Act dropped the *general* bar against exemptions for persons owning other rental units, but the new language did not avail these petitioners because it limited the relevant exemption to rental units owned by persons owning "an aggregate" of "four (4) or fewer units whether within the same structure or not,"[20] and excluded from even that limited exemption owners with "an interest either direct[ ] or indirect[ ] in any other rental unit in the District of Columbia."[21] Once again, therefore, petitioners' ownership of the Lamont Street property rendered them ineligible for exemption from rent control.[22]

Moreover, and perhaps more significantly, the 1977 Act did not become effective until March 16, 1978. By that time, of course, petitioners had not owned 1751 Kilbourne for more than a year, having transferred title to the new owner on March 2, 1977. By their contentions regarding the 1977 Act, therefore, petitioners challenge a ruling allegedly denying them their "*rights*" under an Act not even on the drawing board when they sold the house.[23] But we do not hear them challenging the portion of that same ruling which absolves them of any *responsibility* for the overcharges after that sale. We reject petition-

ers' self-serving (albeit imaginative) construction of the relevant legislation.

*B.* The 1975 Act required landlords to file a registration statement covering "each housing accommodation in the District of Columbia (whether subject to sections 203–212 [rent control] of this act or not)."[24]

The August Act did not affect that requirement. Petitioners still did not file.

The November Act did not affect it, either. Instead, it provided that, *in addition to registering,* persons seeking exemption from rent control file a "claim of exemption statement."[25] Petitioners did not file either statement.

The 1977 Act did eliminate the general obligation to register, but—so far as relevant here—*only* for those owning properties eligible for exemption from rent control who "file with the Rent Administrator a claim of exemption statement" in the form specified.[26] Again, petitioners did not file either the claim of exemption statement or the registration statement.

 Thus, even assuming that petitioners would have been eligible for exemption from rent control under one or another of the controlling statutes, and even assuming, further, that any of those post-1975 statutes could properly be applied retroactively to

---

and thus not a "housing accommodation" within the meaning of the relevant acts. *See* the 1975 Act, § 201(e) (*see* D.C.Code 1978 Supp., § 45–1641(e)), and the 1977 Act, § 102(f) (*see* D.C.Code 1979 Supp., § 45–1681(f)). In view of our construction of the relevant legislation, we need not resolve this question; we note, however, that at all relevant times—including the date on which petitioners and intervenors signed their lease—petitioners have used a Chevy Chase, Maryland, address and not the Kilbourne Street address which they insist was not another rental unit but their own residence.

**20.** Section 205(a)(4) (D.C.Code 1979 Supp., § 45–1686(a)(4)).

**21.** Section 205(a)(4)(B) (*id.,* § 45–1686(a)(4)(B)).

**22.** The number of units in the Lamont Street property is unclear. If words are to convey any meaning, however, a building variously described as "an apartment building," "a multi-unit property," and "a multi-story building" must contain at least three units. And if, in addition, petitioners' Kilbourne Street houses

were counted (*but see* note 19, *supra*), they would total more than four units. In any event, whatever the number of units on Lamont Street, it was unquestionably owned by petitioners, and remained so despite their contention that the April 5, 1977, conveyance of title to that property to Ruth Frenkel as sole owner made them newly eligible for exemption under the 1977 Act. In view of our disposition of some of petitioners' other, related contentions, we consider the point moot.

**23.** The 1977 Act did not even have its first reading until November 15, 1977, more than eight months after petitioners sold the property in question.

**24.** Section 202(b) (D.C.Code 1976 Supp., § 45–1642(b)).

**25.** Section 2(e).

**26.** Sections 205(a)(4)(C), (d) (D.C.Code 1979 Supp., §§ 45–1686(a)(4)(C), (d)).

exempt qualified persons, petitioners never took even the minimal steps necessary to so qualify themselves. Under those circumstances, petitioners' contention that they were entitled to exemption pursuant to *any* of the rent control laws is spurious,[27] and the question whether they might otherwise have been entitled to retroactive application of the pertinent statutes is academic.[28]

### III

The $2,536.00 total refund ordered by the Commission consisted of $2,100.00 actual overcharges found ($140.00 per month for 15 months) plus $280.00 as "treble damages" (twice the amount of the first month's overcharge) plus $156.00 interest.

In their brief on appeal, the landlords conceded the Commission's authority to impose treble damages, but challenged its right to order refunds of the excess rent. Respondent insisted that the refunds were within its authority.[29] Intervenors agreed with respondent, but pointed out that under *Smith v. D. C. Rental Accommodations Commission*, D.C.App., 411 A.2d 612 (1980),

---

**27.** Despite petitioners' protestations of "substantial compliance," their alleged telephone calls and letters to the RAO could not satisfy the explicit statutory requirements for the registration of rental property and the filing of claim-of-exemption statements.

**28.** During argument, petitioners also cited § 205(a)(2)(D)(iv) of the D.C. Rental Accommodations Commission Emergency Regulations (25 DCRR 2661, 9/27/78), which provided:

> [E]ffective March 16, 1978, failure to file a certificate of exemption shall not require the refund of rent paid in excess of an otherwise applicable rent ceiling for a period when the rental unit otherwise qualified for the exemption.

This argument seeks too much. Whatever the Regulation's retroactive effect on landlords, tenants, and rental units in an ongoing relationship on its effective date, it does not apply here. By March 15, 1978, the subject property had been sold more than a year earlier; the subject lease had expired three months earlier; and the subject tenants had vacated more than two months earlier. In short, none of the elements of the transaction in question were any longer present. Under those circumstances, to accept petitioners' contention would be to hold that no legal relationship can be finally determined, but is always subject to the vagaries of later enactments. Fortunately, we need not reach that point.

We are here "reviewing the construction of a statute by the agency charged with its interpretation and enforcement," and, under those circumstances, "the agency's interpretation is controlling unless it is plainly erroneous or inconsistent with the statute." *Totz v. D. C. Rental Accommodations Commission*, D.C. App., 412 A.2d 44, 46 (1980), citing *1880 Columbia Road v. D. C. Rental Accommodations Commission*, D.C.App., 400 A.2d 333, 337 (1978). The tenants' petition here was filed under the 1975 Act, on October 27, 1976. The landlord *never* filed a certificate of exemption. Despite the September 1978 promulgation of the emergency rule in question, the Rent Ad-

ministrator ruled on December 18, 1978, that the landlord's failure to file a certificate of exemption statement was fatal to his claim, relying on the Commission's decision in *In Re T/P # 1006, 1326 Missouri Ave., N.W. [Lovina Merrion v. Albert Makay]* (4/18/78). In August 1979, the Commission affirmed that ruling, thus clearly choosing *not* to apply the emergency rule. For the reasons previously stated, we do not consider that interpretation either plainly erroneous or inconsistent with the statute.

Our conviction that the Commission deliberately chose not to apply the emergency rule to this case is strengthened by its contrary decision in *In Re T/P # 2349, 3521 16th St., N.W. [Anthony Woodfolk v. Thelmas Harris Worrel]* (10/17/79), issued just ten weeks later. No intervening changes had been made to the statutes or regulations. But Woodfolk's petition was filed under the 1977 Act, on August 11, 1978, and the previously delinquent landlord filed her certificate of exemption on August 30, 1978—two weeks later. Affirming the November 28, 1978, decision of its Rent Administrator that the emergency regulation relieved the landlord of any monetary liability to the tenants based on her earlier failure to register the property or certify its exemption, the Commission emphasized that the petition had been "filed and decided" after both the 1977 Act and the critical regulation were in force, and specifically rejected the tenants' reliance on the same *T/P # 1006* decision which formed the basis for decision in our case.

The cases are clearly distinguishable, and the Commission was well within its authority in making the distinction.

**29.** Respondent also asserted that despite "ample opportunity during the administrative proceedings to present the issue [of refunds] to the Commission and the RAO" it was raised for the first time before this court. "It should, thus [respondent continued], not be considered. See *John D. Neumann Prop., Inc. v. District of Col., B.A.R.*, D.C.App., 268 A.2d 605 (1970)."

In view of our disposition of the "refunds" question, we do not address this point.

the treble damages must be calculated upon the entire period of overcharged rent, not just the first month, and concluded that the tenants "are at least entitled to the refund of the overcharge, plus the penalty as already calculated," [30]

During argument, the court asked counsel to address intervenors' suggestion that they should receive both treble damages and a refund for the entire period of the overcharge—in effect, quadruple damages. The government insisted that the Commission was so empowered, but intervenors conceded that such quadruple damages would probably be improper.

With the court's permission, respondent filed a supplemental memorandum on the question, and petitioners replied.[31] Elaborating on his earlier statement, government counsel cited the 1975 Act, its legislative history, and Commission regulations for the proposition that the Commission "could, as it did here, order petitioners to pay intervenors treble damages ... and, in addition, order petitioners to refund to intervenors the amount of rent charged in excess of the rent ceiling."

Petitioners responded that *if* treble damages were required for the entire period, any refund would have to be subsumed therein and that, in any event, treble damages were *not* required because the 1977 Act, rendering them permissible rather than mandatory, should be applied to this case.

█ Respondent filed a reply, stressing the Commission's disagreement with petitioners' suggestion that the damage/penalty provisions of the 1977 Act should be applied retroactively, and concluding that "this Court must apply the treble damages provisions of D.C.Law 1–33, if the Court should decide that the issue is properly be-

fore it"—adding that "respondent agrees with petitioners that this issue is not properly before the Court." [32] We address that contention first, and conclude that both parties are mistaken in that regard. In *Totz v. D. C. Rental Accommodations Commission*, D.C.App., 412 A.2d 44, 46 n.1, this court said:

> Although neither party to this appeal has contested the Commission's computation of treble damages as three times the first month's overcharge, this court has recently ruled that such a computation is contrary to law. . . . On remand, therefore, the Commission must recalculate the refunds due the tenants in accordance with the decision in *Smith.*

The Commission has made the identical computation here and—as with *Totz*—long before this Court's ruling in *Smith.* Thus, there was no opportunity for the parties to raise the issue below, and had it not been raised in intervenors' brief (and compounded in petitioners'), the court would have raised it *sua sponte* as it did in *Totz.*

█ Turning to the merits of the question, we conclude:

(1) The rule of *Smith* and *Totz* is equally applicable here, and the Commission erred in limiting its computation of treble damages to the first month's overcharge. The only substantive challenge to intervenors' contention that they are entitled to treble damages for the full period is petitioners' assertion that this case should be distinguished from *Smith* and *Totz* because the Commission decisions there "predated the effective date of 2–54," whereas the decisions of the Rent Administrator and of the Commission here "were ... rendered well after the ... effective date of the [1977] act." [33]

---

30. Thus, respondent's assertion in its supplemental memorandum that "the issue was neither raised on appeal nor addressed in the briefs filed" is mistaken. At the very least, it was addressed by intervenors.

31. Although given the same opportunity, intervenors did not submit.

32. The basis for respondent's representation as to petitioners' position is unclear.

33. Respondent's opposition to awarding treble damages for the full period appears to rest solely on the contention that the issue is not properly before this court, a contention we have rejected. Thus, while disputing petitioners' misstatements about the Commission decisions in *Smith* and *Totz*, contending that "the

That assertion is simply wrong. As noted earlier, D.C.Law 2–54 took effect on March 16, 1978. Kirk Smith appealed a Commission Decision and Order rendered on August 31, 1978;[34] Bernard Totz challenged a Decision and Order dated January 26, 1979. Moreover, the specific assignment of error in *Totz* was that the Commission erred when it "reversed and remanded the [Rent Administrator's May 31, 1978] decision for the recalculation of ... refunds and ordered, *sua sponte*:

> All overcharged tenants shall also be paid twice the amount of the first month's overcharge as the remaining two-thirds of the treble damages required by Section 215(a) of D.C.Law 1–33 . . . ."

*Totz, supra*, 412 A.2d at 45. Thus, as in the case at bar, the decisions of both the Rent Administrator and of the Commission in *Totz* were also "rendered well after the ... effective date of the [1977] act." Nevertheless, this court held that "it was not error for the Commission to order the imposition of treble damages upon remand from its January 26, 1979 decision," because they were mandated by the 1975 Act (412 A.2d at 46), but that it *was* error for the Commission to limit the computation to the first month's overcharge. *Id.* at n.1 (citing *Smith, supra* ).

Although post-dating in the effective date of the 1977 Act, the Commission decisions in *Smith* and *Totz* concerned events and actions which took place before its enactment; to the extent that those actions violated any law, therefore, it was the 1975 Act. Accordingly, it is that Act to which we must look for the appropriate remedy.[35]

(2) Despite the parties' varied representations about, and characterizations of, past Commission action, it does not appear that the Commission has ever ordered both a refund and treble damages in the true sense of those words, or that this court has ever directed it to do so.[36] That being the case, it would be premature to decide whether such a hypothetical order would be proper— the question raised by intervenors' brief— or even whether the 1975 Act authorized refunds, as such—the question raised by petitioners' brief. Whatever they have called their awards, the Commission has never yet ordered repayment of more than a total of three times the overcharge. That is the amount this court has approved, as mandated by the statute. The court assumes that on remand the Commission will follow its usual practice;[37] if it does not, the questions posed by intervenors and petitioners may then be proper subjects for consideration on appeal.[38]

## IV

Petitioners also challenge the Commission's order that the case be referred for prosecution, based on their "willful failure to comply with the Rent Administrator's Decision and the conditions" upon which it was stayed. However, the record reveals

---

Commission, or the RAO, *must* order treble damages to be paid," and insisting that the 1975 Act controls, respondent challenges the court's authority to correct the Commission's order accordingly.

**34.** *In Re T/P # 1056, 115 2nd St., N.E. Apt. 11* [*Kirk Callan Smith and Maria M. Dela Torres v. The W. Lee O'Daniel Estate*] (8/31/78). The Commission apparently "decided" the case on May 16, 1978—also after the 1977 Act took effect.

**35.** *See Smith, supra*, 411 A.2d at 615, to the effect that the 1977 Act's amendment, making treble damages discretionary, was "a substantive change in the law," *not to be applied retroactively*.

**36.** *See, e. g.*, the confusion evidenced by respondent's assertion in its supplemental memorandum that the court's question at oral argument was whether the Commission "could, as it did here," order treble damages and refunds.

**37.** That is, the Commission will simply add to *each* month's overcharge (as it already has to the *first* month's overcharge) twice the amount of that overcharge.

**38.** *Cf.* the March 14, 1979, *Opinion* letter of Louis P. Robbins, the then Acting District of Columbia Corporation Counsel, to the effect that "the Commission could lawfully determine to order refunds of rents illegally collected under either" the 1975 Act or the 1977 Act, but "in such a case I do not think that an award of both refund and treble damages would be proper."

that no such referral was ever made, and we need not reach that question. We have considered petitioners' other objections to the Commission's decision, and find them to be without merit.

Accordingly, the case is remanded for recalculation of the amounts due in accordance with this opinion and with the decisions in *Smith v. D. C. Rental Accommodations Commission, supra,* and *Totz v. D. C.* *Rental Accommodations Commission, supra.* In all other respects, the decision of the Commission is affirmed.

*So ordered.*