Barbara STRAND and Carol
Edelson, Appellants,

v.

Sinai FRENKEL and Ruth
Frenkel, Appellees.

No. 84–1244.

District of Columbia Court of Appeals.
Argued July 2, 1985.
Decided Nov. 13, 1985.
Rehearing Denied Dec. 10, 1985.

Diana Haines, with whom Scott Alexander, Dean Stoline, and Margaret Walsh, law students, were on brief, for appellants.

Philip M. Musolino, with whom Kenneth J. Loewinger, Washington, D.C., was on brief, for appellees.

Before NEWMAN and FERREN, Associate Judges, and PAIR, Senior Judge.

FERREN, Associate Judge.

Appellants (the tenants) sued in Superior Court to collect treble damages which the Rental Housing Commission (RHC) had ordered appellees (the landlords) to pay because of rental overcharges under the Rental Accommodations Act of 1975, D.C. Code §§ 45–1631 to –1674 (Supp.1976) (1975 Act). The motions judge granted summary judgment for the landlords. He also ruled that, in the event of reversal by this court, the tenants would be entitled to only 40% of the RHC award because of a failure to join indispensable tenant parties. Agreeing with the tenants, we conclude—contrary to the landlords' assertions before the motions judge and on appeal—that the tenants had standing to bring this enforcement action, that the action was not barred by the statute of limitations, and that the tenants did not fail to join indispensable parties. Accordingly, because the landlords' liability has been finally adjudicated in a prior proceeding, we reverse and remand to the trial court for entry of judgment for the tenants in the amount awarded by the RHC: $6,897.23.

## I.

On October 27, 1976, the tenants filed a petition with the Rental Accommodations Office (RAO) alleging rental overcharges under the 1975 Act. *Id.*, § 45–1652. On December 18, 1978, the Rent Administrator awarded them a refund totaling $2,536.00, plus interest, for the period from December 20, 1975 through January 31, 1978. The landlords appealed to the Rental Accommodations Commission (RAC),[1] which stayed the Rent Administrator's decision on the condition that the landlords place the refund in escrow. They did not comply. The RAC affirmed the Rent Administrator's award on August 3, 1979 and referred the case to the Corporation Counsel for proceedings against the landlords for willful failure to comply with the Rent Administrator's decision and the conditions of the

---

**1.** The Rental Accommodations Commission was the statutory predecessor of the RHC, which was established under the Rental Housing Act of 1980 (the 1980 Act). *See* D.C.Code §§ 45–1511, –1512 (1981).

stay. The landlords then filed a petition for review by this court. The record does not reflect any action by the Corporation Counsel or any further stay pending appeal.

On July 7, 1981, we affirmed the landlords' liability for overcharges. *Frenkel v. District of Columbia Rental Accommodations Commission*, 432 A.2d 1226 (D.C. 1981). Perceiving an error in the treble damage computation to the tenants' detriment, however, we remanded to the RHC, *see supra* note 1—which in turn remanded to the RAO—for determination of the precise amount owed. *Id.* at 1234.

After the remand, the Rent Administrator issued an order on November 19, 1982, awarding the tenants $6,879.23 representing three times the amount of the overcharges plus interest. No stay was entered. The landlords appealed to the RHC. While this administrative appeal was pending, the tenants filed suit in Superior Court on January 11, 1983 for enforcement of the Rent Administrator's award. On July 14, 1983, the RHC affirmed that award. The landlords did not petition this court for review.

The tenants moved for summary judgment on May 4, 1984; the landlords filed an opposition, as well as a cross-motion for summary judgment, alleging that the tenants lacked standing to sue, that their action was barred by the statute of limitations, and that they had failed to join indispensable tenant parties. On July 6, 1984, the motions judge granted summary judg-

ment for the landlords, adopting "the arguments of defendant[s]." The judge also ruled that, if the tenants' suit had not been barred, they would have been entitled to only 40% of the $6,879.23 award because, although they were the only tenants who had signed the lease, they were only two of five tenants paying rent for the premises.

## II.

We consider, first, the tenants' standing to sue. Section 45–1673 of the 1975 Act expressly stated that the Rent Administrator and the RAC, *see supra* note 1, could bring suit in Superior Court to enforce their respective decisions.[2] In contrast, § 45–1529 of the Rental Housing Act of 1980, D.C. Code §§ 45–1501 to –1597 (1981) (1980 Act)—which was in effect when the tenants filed this lawsuit—provides that the Rent Administrator, the RHC, or "any affected landlord or tenant" may bring an enforcement action in Superior Court.[3] The 1980 Act expressly supersedes both the 1975 Act and the Rental Housing Act of 1977, D.C.Code §§ 45–1681 to –1699.27 (Supp.1980) (1977 Act).[4] The 1980 Act, however, sets forth an exception: petitions filed under the 1977 Act shall be determined under the provisions of that Act. *See supra* note 4. There is no similar exception for actions filed under the 1975 Act. *See supra* note 4.

The landlords contend that, because the tenants filed their petition in October 1976, when the 1975 Act was still in effect, their

---

2. D.C.Code § 45–1673(a) (Supp.1976) provides in part:

   The Commission on its own initiative, or the Rent Administrator, may commence a civil action to enforce any rule or decision of the Commission or Rent Administrator, as the case may be. Such an action brought by the Commission or Rent Administrator, as the case may be, shall be brought in the Superior Court of the District of Columbia.

3. D.C.Code § 45–1529 (1981) provides:

   The Rental Housing Commission, Rent Administrator, or *any affected landlord or tenant* may commence a civil action in the Supe-

rior Court of the District of Columbia to enforce any rule or decision issued under this chapter.

4. D.C.Code § 45–1594 (1981) provides:

   This chapter shall be deemed to supersede the Rental Accommodations Act of 1975, and the Rental Housing Act of 1977: Except, that a petition filed with the Rent Administrator under the Rental Housing Act of 1977 shall be determined under the provisions of the Rental Housing Act of 1977.

suit must be governed by the terms of that Act. Accordingly, say the landlords, the tenants lack standing to sue in Superior Court to enforce the 1983 RHC treble damage award because the 1975 Act explicitly designates the Rent Administrator or the RAC—and thus, implicitly, no one else—to bring such an enforcement action.

We therefore must decide, initially, whether § 45–1673 of the 1975 Act or § 45–1529 of the 1980 Act applies to a Superior Court action filed by a tenant in January 1983 to enforce an RHC award under the 1975 Act.[5]

In *Scholtz Partnership v. District of Columbia Rental Accommodations Commission,* 427 A.2d 905 (D.C.1981), this court considered a petition for review of four separate cases concerning landlord hardship petitions filed under the 1975 Act. The landlords argued that the 1975 Act applied to them even though, in three of the four cases, the 1975 Act had expired— and been replaced by the 1977 Act—before expiration of the 60 days within which the landlords were entitled, under the 1975 Act, to a ruling by the Rent Administrator. *See id.* at 913, 917. The landlords asserted, more specifically, that under the circumstances they were entitled to a hardship increase under the 1975 Act, for which they had timely filed, and, simultaneously, to the automatic increase provided by the 1977 Act, *i.e.,* to both "a dip from the old Act and one from the new." *Id.* at 912. Application of the 1977 Act alone, they said—requiring an election between a hardship and an automatic increase—would entail a retroactive application of the law and thus would unjustly infringe upon their

legitimate expectations at the time they filed under the 1975 Act. *Id.* at 913.

In rejecting that argument, we stated the general proposition that "an administrative agency must apply the law in effect at the time of its decision in order to avoid sanctioning illegal conduct" and that "[w]here petitions are pending at the time of the enactment of a new law, they must be decided under that law if the law can reasonably be construed to apply to those petitions." *Id.* at 914 (citations omitted). We then noted the express intention of the Council of the District of Columbia to subject all outstanding hardship petitions to the terms of the 1977 Act as of its effective date. *Id.* We accordingly concluded that the 1977 Act was "clearly applicable on its face," *id.,* and thus should govern the hardship petitions on appeal absent "manifest injustice." *Id.* (citing *Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974)).

Perceiving no such injustice, we held that the 1977 Act should apply to three of the four petitions because they had not been filed in time to entitle the landlords to rulings under the 1975 Act. These three landlords, therefore, had "a mere economic expectancy anchored in the procedural mechanisms of the old [1975] Act." *Id.* at 918. This was not enough to preclude exclusive application of the 1977 Act at the time they became entitled to a ruling. In contrast, the other landlord had filed early enough to be entitled to a Rent Administrator's ruling before the 1975 Act had expired.[6] Thus, he had a vested right to an increase under that Act, as well as any

---

5. Alternatively, we could proceed, initially, to determine whether § 45–1673 of the 1975 Act precluded a tenant from suing to enforce a Commission award. If we were to conclude that it did not, we would not have to resolve whether the 1975 or the 1980 Act applies because the tenants would have standing to sue under either Act. We choose not to resolve the 1975 Act question because, under present case-law, the 1980 Act clearly applies here.

6. This landlord, through no fault of his own, received a decision later than 60 days after filing. This violated his rights under the 1975 Act, D.C.Code § 45–1652(a) (Supp.1976), since neither the landlord and tenant nor the RAC had given written approval of an extension of that 60-day period. *See Scholtz,* 427 A.2d at 917.

increase that might be available under the 1977 Act.[7]

In the present case, the 1980 Act expressly supersedes the 1975 Act. *See supra* note 4. Moreover, as in *Scholtz,* "there is no savings clause in the [1980] Act which provides for the application of the 1975 Act to pending petitions." *Scholtz,* 427 A.2d at 914. This contrasts with the savings clause in the 1980 Act providing that the 1977 Act shall apply to petitions under that Act. *See supra* note 4; *cf. Kew Gardens Joint Venture v. District of Columbia Housing Rent Commission,* 359 A.2d 269, 270–71 (D.C.1976). Furthermore, whereas all the landlords in *Scholtz* at least had a nonfrivolous argument that they were entitled to increases under both the 1975 and 1977 Acts, the landlords here are resisting enforcement of a finally adjudicated liability which, after the RHC had ruled on July 14, 1983, they did not even contest on direct appeal to this court. Their argument, therefore, amounts to no more than an alleged entitlement to favorable legal consequences from the agency's failure to sue to enforce an award which the landlords no longer are entitled to question and thus clearly should be expected to pay. This argument is really an asserted vested right to "luck out" when an administrative agency does not use its resources to enforce, as well as to adjudicate, a tenant's rights. That is frivolous, indeed disingenuous.

██ In sum, the 1980 Act, without a relevant savings clause, is "clearly applicable on its face," *Scholtz,* 427 A.2d at 914, and there would be no "manifest injustice," *id.,* to the landlords in applying the 1980 Act here. Indeed, there would be manifest injustice to the tenants if we were to apply the 1975 Act and construe it, as the land-

lord wishes, to mean that the tenants had no right to sue to enforce a finally adjudicated liability.

## III.

The landlords next contend that the tenants' enforcement action is barred by the statute of limitations. They assert that the action accrued no later than the initial decision of the Rent Administrator on December 18, 1978, and that the tenants did not file suit until January 11, 1983. Accordingly, they say, this action is time barred under the three-year statute applicable to suits to recover administratively-determined rental overcharges. *See* D.C.Code § 12–301(8) ("limitation ... not otherwise specifically prescribed"); *McCulloch v. District of Columbia Rental Accommodations Commission,* 449 A.2d 1072, 1073 n.3 (D.C.1982); *Lustine v. Williams,* 68 A.2d 900, 902 (D.C.1949); *Shenk v. Cohen,* 51 A.2d 298, 299–301 (D.C.1947); *Heitmuller v. Berkow,* 83 U.S.App.D.C. 70, 165 F.2d 961 (1948).

The tenants respond that the earliest the statute could have begun to run was November 19, 1982, when the Rent Administrator issued the $6,897.23 treble damage award. They reason that their lawsuit is an action on a debt, which did not accrue until the Rent Administrator correctly calculated a "sum certain" responsive to this court's remand of *Frenkel* to the RHC. Their action, they say, was therefore timely because they filed it within two months after its earliest possible accrual.

██ We agree that the tenants' action is not time barred. Neither party, however, has presented the proper analysis. Both parties' positions are fundamentally

7. The *Scholtz* decision reflects a distinction between the applicability of procedural and substantive provisions of an expired rent control law when a landlord or tenant has filed a timely petition under that law but has not received a ruling before a new statute, without a savings clause, has become effective. If application of the new statute would eliminate substantive rights which have accrued under the expired rent control law, we have commonly applied the expired law. *See, e.g., Frenkel,* 432 A.2d at 1233 (footnote omitted); *Smith v. D.C. Rental Housing Comm'n,* 411 A.2d 612, 615 (D.C.1980).

wrong because they fail to distinguish between (1) an administrative proceeding (such as *Frenkel*) to establish liability for rental overcharges and (2) a later court action (such as this one) to enforce a finally adjudicated liability for those overcharges. The former finally determines the merits of the claim after final agency action and (if requested) appellate court review. The latter is a new, wholly independent trial court action to enforce, in effect, a final judgment into which the merits of the original claim have merged. *See MacVey v. MacVey*, 98 A.2d 794, 795 (D.C.1953); *Indemnity Insurance Co. of North America v. Smoot*, 80 U.S.App.D.C. 287, 290, 152 F.2d 667, 670 (1945), *cert. denied*, 328 U.S. 835, 66 S.Ct. 981, 90 L.Ed. 1611 (1946); RESTATEMENT (SECOND) OF JUDGMENTS § 18 (1982). Because of such merger, the underlying merits of the judgment are immune from collateral attack in an enforcement action; principles of claim preclusion (*res judicata*) bar such inquiry. *See Henderson v. Snider Bros. Inc.*, 439 A.2d 481, 485 (D.C.1981) (en banc); RESTATEMENT (SECOND) OF JUDGMENTS § 18.[8] Finally, because there are two distinct causes of action (the merits and the judgment), the statute of limitations on an enforcement action does not begin to run—since it has not accrued—until the underlying merits of the claim have been finally adjudicated and thus merged into the final judgment. *See Galt v. Todd*, 5 App.D.C. 350, 354–55 (1895).[9]

In applying these principles to the right under D.C.Code § 45–1529 (1981) to "commence a civil action in the Superior Court ... to enforce [a] ... decision" awarding damages for rental overcharges, we note, first, that "decision" means "final decision." Otherwise, the underlying merits will not have merged into a final decision precluding collateral attack (*e.g.*, for failure to exhaust administrative remedies), and any enforcement effort would thus be premature. *See Chicago, Rock Island & Pacific Railway Company v. Schendel*, 270 U.S. 611, 623, 46 S.Ct. 420, 424, 70 L.Ed. 757 (1926); *Auger v. District of Columbia Board of Appeals and Review*, 477 A.2d 196, 207 (D.C.1984); RESTATEMENT (SECOND) OF JUDGMENTS § 13.

Because final agency action is subject to judicial review, D.C.Code § 45–1530 (1981); *see id.*, § 1–1510(a), we confront the question whether an administrative agency's own final decision, such as the RAC's August 3, 1979 affirmance of the Rental Administrator's initial refund determination, is—unless formally stayed, *see* D.C.App.R. 18, 19 (1985)—a final decision for § 45–1529 enforcement purposes, with the benefit of claim preclusion (*res judicata*); or whether, instead, an administrative decision does not become final for enforcement purposes until completion of the judicial review process either by definitive appellate court action or expiration of the appeal period.

---

**8.** The only defenses to a timely filed action upon a final judgment are lack of forum jurisdiction and procurement of the judgment by fraud. *See Indemnity Insurance Co. of North America*, 80 U.S.App.D.C. at 289, 152 F.2d at 669. In addition, absent a stay, a judgment creditor must enforce a judgment rendered in the Superior Court (or in the United States District Court for the District of Columbia) within 12 years "from the date when an execution might first be issued thereon" unless revived within the 12 year period. D.C.Code § 15–101 (1981); *see id.* § 15–103 (revival).

**9.** Technically, the RHC issues a "decision," not a "judgment." Moreover, unlike a trial court, the RHC has no authority to enforce its decisions; if enforcement is necessary, the RHC (or other interested parties) must go to court pursuant to D.C.Code § 45–1529 (1981), *supra* note 3. Conceptually, however, a court action to enforce an agency decision awarding money damages is analogous to a suit upon a money judgment. Accordingly, the rules governing merger of finally adjudicated claims into a judgment and the use of *res judicata* to bar collateral attack on the underlying merits of a final judgment are applicable in the context here. However, the time limitations applicable to enforcement of judgments, *see supra* note 8, do not apply to § 45–1529 enforcement actions. As noted in the text above, this court has held that a three-year statute applies. *See* D.C.Code § 12–301(8) (1981).

■ Finality is commonly accorded trial court judgments, absent a stay, pending appeal. *See, e.g., Mahoney v. Campbell,* 209 A.2d 791, 794 (D.C.1965); *Hunt v. Liberty Lobby, Inc.,* 228 U.S.App.D.C. 88, 92–93, 707 F.2d 1493, 1497–98 (1983); *Synanon Church v. United States,* 579 F.Supp. 967, 974 (D.D.C.1984); RESTATEMENT (SECOND) OF JUDGMENTS § 13 comment f.[10] As a result, the limitation period applicable to enforcement of judgments, *see supra* note 8, may begin to run during the appeal period. *See Galt,* 5 App.D.C. at 354–55. Arguably, the same rule of finality is applicable to final agency actions. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 83 & comment a. In the context here, however, this rule of finality does not apply.

This court has held that when the RAO has primary jurisdiction over a matter, a Superior Court action to enforce rights as to the property must be held in abeyance until both the administrative remedies (through final RHC action) and the right of judicial review have been exhausted. *Washington Federal Savings and Loan Association v. Whiteside,* 488 A.2d 936 (D.C.1985). We concluded in *Whiteside* that the trial court correctly deferred to the RAO, but we also ruled that dismissal of the lawsuit was not necessary or even appropriate. "[A] proper ruling was not to dismiss but to stay further proceedings pending the final determination of the administrative proceedings, including judicial review where sought." *Id.* at 938. We remanded for entry of such an order. *Id.*

■ We did not specifically consider whether, if the RHC eventually issued a decision affirming the Rent Administrator, the RHC decision would be final (absent a formal stay pending appeal) for purposes of determining the date when a cause of action under § 45–1529 accrues and the corresponding statute of limitations begins to run. But the clear import of our ruling was that finality for enforcement purposes had to await completion of judicial review or expiration of the appeal period. Given our conclusion that the trial court had no discretion to entertain any action, over which the administrative agency had primary jurisdiction, until after all right of direct review by this court had been exhausted, it would not make sense to say that a party who prevails before the RHC has, nonetheless—at that point—a ripe cause of action on which the statute of limitations begins to run (unless expressly stayed pending appellate review). In effect, therefore, *Whiteside* deems all RHC decisions stayed, for finality purposes, pending judicial review.[11] It follows that no § 45–1529 enforcement right accrues—and no corresponding statute of limitations begins to run—until judicial review rights have been exhausted.[12]

---

**10.** The federal rule, for example, is that, absent a stay, "the pendency of an appeal does not suspend the operation of an otherwise final judgment as res judicata or collateral estoppel." *Hunt,* 228 U.S.App.D.C. at 93, 707 F.2d at 1498 (quoting 1B MOORE'S FEDERAL PRACTICE ¶ 0.416 [3], at 2252–54).

**11.** Pending appeal, therefore, the losing party before the RHC need not seek a stay from the agency or from this court, pursuant to D.C. App.R. 18 (1985), to prevent finality. The prevailing party, however, may ask this court, pursuant to D.C.App.R. 19 (1985), to require the losing party to "post a supersedeas bond on such conditions, in such amount, and with such sureties, as the court deems necessary" to protect the prevailing party's interests in the RHC decision. This court has considerable discre-

tion under Rule 19. If, for example, in contrast with the present case, a landlord were to prevail in a proceeding for a rent increase and the tenant were to appeal, this court could—if appropriate—fashion a bond requirement that requires the tenant to make payments into the trial court registry.

**12.** If the rule of finality applicable to trial court judgments were also applied to RHC decisions awarding, for example, compensation for rental overcharges, there is some danger that the three-year statute of limitations on a final RHC decision—in contrast with the 12-year period applicable to judgments, *see supra* note 8—could run pending an appeal to this court, absent a stay of the RHC decision or a timely protective (and stayed) lawsuit to enforce it. The party prevailing at the RHC should not have to as-

In the present case, the landlords' basic liability for rental overcharges under the 1975 Act was not resolved until this court's decision in *Frenkel*. But *Frenkel* did not completely resolve the matter. The precise amount of the landlords' liability was not finally adjudicated until, after this court's remand, three events occurred: the RHC had affirmed the RAO's treble damage award on July 14, 1983, the landlord had received formal notice of that decision, and the 15-day period for petitioning this court for review had expired. *See* D.C.App.R. 15(b), 26 (1984); *Auger*, 477 A.2d at 212.[13] As a consequence, the tenants' enforcement claim, in contrast with their initial claim for rental overcharges, did not accrue—and the three-year statute of limitations did not begin to run—until early to mid-August, 1983, seven months after they filed suit. The question, then, is not whether the tenants waited too long to sue but whether, in any sense prejudicial to the landlords, they sued too soon.

 We perceive no reason why the suit should not stand. Had the parties or the motions judge applied the same analysis we have used here, the judge would have formally stayed court proceedings until there was final agency action on the Rent Administrator's computation and all right of direct review by this court had been exhausted. *See Whiteside*, 488 A.2d at 938.

However, before the trial court ruled on July 6, 1984, granting summary judgment for the landlords, the RHC had affirmed the RAO's award and the landlords had permitted the appellate court review period

to expire. Thus, the trial court, in effect, had stayed its hand until after all the necessary action for finality had been taken. We conclude, accordingly, that the tenants' lawsuit, while premature, did not effectively proceed until the right to sue had accrued upon final adjudication of their right to treble damages under the 1975 Act.

## IV.

The tenants finally contend the motions judge erred in ruling that, in event of reversal on other grounds, the two appellants were entitled to only 40% of the RHC award because they had failed to join indispensable parties: three persons who, although not signatories to the lease, lived in the house, shared the rental expense, and made payments directly to the landlords.

 The landlords could—and should—have litigated this issue in the course of challenging the tenants' petition alleging rental overcharges based on the full monthly rent for the house. They failed to do so. Accordingly, the tenants' unchallenged right to collect damages, based on the full amount of each month's rent, was finally adjudicated in that proceeding which culminated in *Frenkel*. The landlords are therefore precluded, by *res judicata*, from collaterally attacking the treble damage award now. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 18.[14]

*Reversed.*

sume such a burden, and any prejudice from the rule of finality we announce here can be obviated by the bond requirement of D.C.App.R. 19 (1985). *See supra* note 11. The history of *Frenkel* makes clear, in any event, that if a tenant had a right to seek enforcement of an RHC award pending review by this court, and if the lawsuit were not stayed, there might eventually be a problem of inconsistent judgments requiring time-consuming and costly court resolution. *See* RESTATEMENT (SECOND) OF JUDGMENTS §§ 13 comment f, 16 comments b and c. For these reasons, the rule that an RHC decision is not final for § 45–1529 enforcement purposes

until the right of direct review by this court has been exhausted—and thus that the three-year statute of limitations does not begin to run until that date—makes eminently good sense.

**13.** Effective January 1, 1985, D.C.App.R. 15 was amended to provide a 30-day period for petitioning this court for review of an agency order or decision. D.C.App.R. 15(a) (1985).

**14.** It is interesting to note that the landlords already had waived their right to raise the indispensable party issue before this court ruled in *Frenkel*, for they had not presented it to the RAC

when they initially appealed the Rent Administrator's December 18, 1978 decision. *See Rhodes v. Quaorm,* 465 A.2d 370, 373 (D.C. 1983).

Nonetheless, the RHC did consider—and reject—the indispensable party contention when the landlords raised it for the first time in appealing the Rent Administrator's $6,897.23 treble damage award after the *Frenkel* remand. The landlords did not petition this court for review. That ended the matter.

Even if the RHC had properly entertained the indispensable party issue at that late date, it would be immaterial that the RHC had not affirmed the Rent Administrator's calculation before the tenants filed the present suit. Final adjudication of the treble damage award, although subsequent to the filing of this action, had become effective before the motions judge ruled on the landlords' summary judgment motion. This is enough for its preclusive effect. "In order that a final judgment shall be given res judicata effect in a pending action, it is not required that the judgment shall have been rendered before that action was commenced.... It is merely required that rendition of the final judgment shall antedate its application as res judicata in the pending action." RESTATEMENT (SECOND) OF JUDGMENTS § 14 comment a.