Frank Peter BOER and Ellen S.
Boer, Petitioners,

v.

DISTRICT OF COLUMBIA RENTAL
HOUSING COMMISSION,
Respondent,

Arthur A. Houghton, III, and Sherrill
M. Houghton, Intervenors.

No. 88–798.

District of Columbia Court of Appeals.

Argued May 18, 1989.
Decided Sept. 22, 1989.

Michael E. Brand, with whom Paul D. Crumrine, Washington, D.C., was on the brief, for petitioners.

Arthur F. Konopka, with whom Stephen M. Truitt, Washington, D.C., was on the brief, for intervenors.

Frederick D. Cooke, Jr., Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., and Martin B. White, Asst. Corp. Counsel, filed a memorandum in lieu of brief for respondent.

Before MACK, NEWMAN and TERRY, Associate Judges.

TERRY, Associate Judge:

Petitioners Frank and Ellen Boer, former tenants of intervenors Arthur and Sherrill Houghton, seek review of a decision of the Rental Housing Commission (RHC) giving them only limited relief for violation of the rent control laws by intervenors. Finding no error, we affirm the RHC's decision.

## I

In anticipation of out-of-town employment which would require them to rent what had been the family home, Mr. and Mrs. Houghton registered their home on November 20, 1974, with the Rent Administrator.[1] The registration statement was filed by the Houghtons' agent, Begg Realtors, which thereafter managed the property for the Houghtons. The authorized rent ceiling[2] under this registration was $1,460 per month.

Several years later, in June 1983, the Houghtons (landlords) agreed to lease the house to the Boers (tenants) for two years, from September 1, 1983, through August 31, 1985, at a monthly rental of $3,500. It is undisputed that at the time of the lease the house was exempt from rent control, but that the landlords did not comply with the requirement of filing a claim of exemption under D.C.Code § 45–1516(a)(3)(C) (1981).

In March 1985, having discovered the landlords' omission, the tenants filed a petition with the Rental Accommodations Office alleging that the landlords had not filed a new claim of exemption as required by the Rental Housing Act of 1980 (the 1980 Act),[3] and that they had therefore been overcharged by $2,040 per month since the beginning of their tenancy. The tenants requested a refund of the overcharges and treble damages under D.C. Code § 45–1591(a) (1981), plus attorney's fees under D.C.Code § 45–1592 (1981).

In due course a hearing on the tenants' petition was held before a hearing examiner. The main issue before the examiner was whether the tenants were entitled to a rent refund or treble damages, or both, based on the landlords' failure to comply with the 1980 Act. The hearing examiner denied the tenants' request for a refund and treble damages except for the period from February 7, 1985, until April 5, 1985 (the date on which the landlords finally filed their claim of exemption). He award-

---

1. At that time, every landlord of a housing accommodation in the District of Columbia had to file a registration statement with the Rent Administrator providing certain information about the housing accommodation. *See* D.C.Code § 45–1642(b) (1978 Supp.). The current law still requires such statements to be filed. D.C. Code § 45–2515(f) (1986).

2. *See* D.C.Code § 45–1517 (1981).

3. D.C.Code § 45–1516 (1981) is part of the 1980 Act. Subsection (a)(3) exempts certain types of housing from rent control, provided that the owner of each exempt property files a "claim of exemption statement" under oath with the Rent Administrator. The 1980 Act controls the dispute in this case because the tenant petition was filed under the 1980 Act; the Rental Housing Act of 1985 did not go into effect until several months later. *See* D.C.Code § 45–2593 (1986).

ed treble damages for this two-month period, relying primarily on two earlier decisions of the RHC, *Gibbons v. Hanes*, No. TP 11,076 (July 11, 1984), and *Reid v. Quality Management Co.*, No. TP 11,307 (February 7, 1985), *aff'd sub nom. Quality Management, Inc. v. District of Columbia Rental Housing Commission*, 505 A.2d 73 (D.C.1986). The hearing examiner's decision was affirmed by the RHC, and the tenants' motion for reconsideration was denied. The tenants then filed the instant petition for review.[4]

## II

Before this court the tenants present three claims of error. First, they contend that the RHC erred in not awarding them a rent refund for the rent overcharges which they paid from September 1, 1983 (the effective date of the lease), until February 7, 1985. Second, they assert that the RHC erred in not awarding them treble damages for the period from December 2, 1983, to April 5, 1985 (the date on which the landlords' claim of exemption was filed). Finally, they maintain that the RHC erred in not ruling on their claim of entitlement to a refund for the period after April 5, 1985.

In concluding that the tenants were not entitled to a refund or treble damages except for a two-month period, from February 7 to April 5, 1985, the hearing examiner based his ruling on the RHC's earlier decisions in the *Gibbons* and *Reid* cases. The RHC agreed with the application of those cases to the facts of the instant case, holding that the hearing examiner (1) did not abuse his discretion in denying a rent refund and treble damages for the period before February 7, 1985, and (2) did not err in limiting his award of treble damages to the period from February 7 to April 5. The only real issue before us, therefore, is whether the underlying decisions in *Gibbons* and *Reid* were correct.

In *Gibbons* the RHC took the "opportunity to establish policy concerning the re-

quirement that landlords file claims of exemption" under the 1980 Act. *Gibbons, supra* at 1. Noting that its position had been evolving and somewhat inconsistent from case to case, the RHC ruled that it "would not be equitable ... to penalize a landlord for failure to file a claim of exemption, under normal circumstances, until notice of that mandate has been provided [to] all affected landlords." *Id.* at 2. The RHC went on to hold that "the requisite notice was provided on December 2, 1983, with the publication in the D.C. Register of the final regulations" implementing the 1980 Act. *Id.* Because its policy had previously been unclear, the Commission made its holding prospective "from this date."[5] Further, the RHC ruled that the use of the word "may" instead of "shall" in one of the regulations, 14 DCMR § 3407.1 (1983), vested hearing examiners with discretion to penalize a landlord for failure to file a claim of exemption, but "[i]n no event should treble damages be assessed prior to December 2, 1983." *Id.* at 3. The RHC ended its opinion in *Gibbons* with language that bears directly on the instant case:

> If a landlord asserts after December 2, 1983, that rental units are exempt but no claim is on file, he is subject to the full penalties of the Act unless exceptional circumstances exist. The Examiner should review the surrounding circumstances. We believe, *for example*, that a landlord who rents a single-family home, within which he has resided, at a reasonable rent but who failed to file a claim of exemption, should not be penalized if he can establish to the satisfaction of the Examiner that he is not a landlord regularly and that he reasonably was unaware of the requirement of filing a claim of exemption.

*Id.* at 3 (emphasis added). Thus the RHC left the door open for a landlord to prove exceptional circumstances which would excuse his or her failure to file a claim of

---

4. The hearing examiner also denied the tenants' request for attorney's fees and costs, but the tenants do not contest that ruling.

5. It is not entirely clear whether "this date" means the date on which the regulations were issued, December 2, 1983, or the date of the *Gibbons* decision, July 11, 1984. For the purposes of this case, however, it does not matter.

exemption, and thereby to escape financial penalties.

■ We hold that this was a reasonable interpretation of the governing statutes. D.C.Code § 45–1516(a)(3)(C) (1981) requires landlords to register any property exempt from rent control with the Rent Administrator. D.C.Code § 45–1591(a) (1981) establishes penalties, however, only for "knowing" violations of this requirement.[6] Hence a landlord who could prove that he or she "was reasonably unaware of the requirement of filing a claim of exemption," *Gibbons, supra* at 3, would necessarily demonstrate that the violation was not a "knowing" one. Such proof would constitute a showing of "exceptional circumstances" as that term is used in *Gibbons.*

■ In this case the hearing examiner did not use the magic words "exceptional circumstances." His express reliance on *Gibbons,* however, satisfies us that he found exceptional circumstances to exist. When the Houghtons left Washington in 1974, they complied with the applicable District of Columbia rental housing law. Up to that time, they themselves had lived in the house which they placed on the rental market. They were not landlords regularly, and they charged a reasonable rent.[7] The example of "exceptional circumstances" given by the RHC in the passage from *Gibbons* which we have quoted above fits their situation precisely.[8]

■ The hearing examiner and the RHC also recognized the applicability of the *Reid* decision, *supra,* insofar as *Reid* modified the exceptional circumstances test of *Gibbons.* The RHC held in *Reid* that when a landlord is represented by a knowledgeable agent, it is "altogether insufficient" for the landlord to be excused from violations of the statute on the ground that the agent did not understand its requirements. *Reid, supra* at 3.[9] However, because the circumstances in which a landlord represented by an agent could be held to have acted knowingly had been unclear before *Reid,* the hearing examiner decided to apply *Reid* prospectively, and therefore assessed treble damages only from the date *Reid* was published (February 7, 1985) until the date on which the landlords finally filed their claim of exemption (April 5, 1985). The RHC affirmed the examiner's decision, and we in turn affirm the RHC's decision as a reasonable gloss on *Gibbons* and D.C. Code § 45–1591.

■ This court must defer to an agency's interpretation of the statute which it administers, and of its own regulations implementing that statute, so long as that interpretation is reasonable and consistent with the statutory language. *E.g., Smith v. District of Columbia Department of Employment Services,* 548 A.2d 95, 97 (D.C.1988) (citing cases); *Charles E. Smith Management, Inc. v. District of Columbia Rental Housing Commission,* 492 A.2d 875, 877 (D.C.1985); *Remin v. District of Columbia Rental Housing Commission,* 471 A.2d 275, 279 (D.C.1984); *see Udall v.*

---

6. Section 45–1591(a) states in pertinent part:
   Any person who knowingly ... receives any rent for a rental unit in excess of the [rent ceiling] ... shall be held liable ... for the amount by which the rent exceeds the applicable rent ceiling or for treble that amount and/or for a roll back of the rent to such amount as the Rent Administrator or Rental Housing Commission shall determine.

7. The house at issue is in one of the most attractive residential areas in the city of Washington. Although it is not described in the record in any detail, the record does reveal that the property includes both a swimming pool and a greenhouse and that the landscaping is fairly extensive.

8. The RHC remarked in another case, citing *Gibbons:*

There are practical rationales for the Commission's long-standing decision not to invoke a penalty anytime a landlord of an eligible property neglected to file the statutory claim of exemption. In a transient city such as Washington, D.C., many owners of single-family houses, for example, occasionally rent their homes for a year or more when their work assignments take them elsewhere. They are not commercial landlords, in the customary sense, and should not be financially punished because they did not comply with this technical requirement.
*Keys v. Urciolo,* No. TP 11,507 (March 25, 1987), at 2.

9. Under the 1980 Act, the agent as well as the owner is deemed to be a "landlord." D.C.Code § 45–1503(12) (1981).

*Tallman,* 380 U.S. 1, 16–18, 85 S.Ct. 792, 801–02, 13 L.Ed.2d 616 (1965). Our review "is limited to whether the [agency's] findings are unsupported by substantial evidence in the record as a whole, or whether its decision is grounded on a faulty legal premise, or amounts to an abuse of discretion." *Remin, supra,* 471 A.2d at 277 (citations omitted).

The only violation committed by these landlords was their failure to file a claim of exemption for an undisputedly exempt property. Construing the statute which it administered, the RHC in *Gibbons* vested in its hearing examiners broad discretion to decide whether such a violation warrants any sanction and, if so, what the sanction or sanctions should be. That construction was not unreasonable or contrary to the statutory language. The long and short of this case is that the RHC found a "knowing" violation of the registration requirement only for the period following *Reid,* based on the exceptional circumstances rule first announced in *Gibbons.* The record demonstrates neither that the hearing examiner abused his discretion, nor that the RHC construed "knowingly" in D.C.Code § 45–1591(a) in a manner that was plainly wrong. There being no other ground for reversal,[10] the decision of the RHC is therefore *Affirmed.*

---

**10.** In addition to their other arguments, the tenants contend that this case should be remanded because the RHC did not rule on their request for a rent refund for the period after April 5, 1985. We read the record differently. In upholding the limited punishment meted out to the landlords, the RHC approved the hearing examiner's decision, which included a finding that after April 5, 1985, the rent ceiling was $3,500. Since the RHC did not disturb this finding, and since the rent never exceeded that figure before or after April 5, 1985, it is implicit in the record that the RHC considered and rejected this claim.