**Robert F. McCULLOCH, Petitioner,**

v.

**DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, Respondent.**

**No. 89–1341.**

District of Columbia Court of Appeals.

Argued Nov. 20, 1990.
Decided Jan. 9, 1991.

Robert F. McCulloch pro se.

Lutz Alexander Prager, Asst. Deputy Corp. Counsel, Herbert O. Reid, Sr., Corp. Counsel at the time the Memorandum in Lieu of Brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, filed a

Memorandum in Lieu of Brief for respondent District of Columbia Rental Housing Com'n.

Karen A. Newton, Neighborhood Legal Services Program, with whom Michael O. DeMouy, Neighborhood Legal Services Program, was on the brief, for intervenors/tenants.

Before ROGERS, Chief Judge, and FERREN and FARRELL, Associate Judges.

FERREN, Associate Judge:

In this case in its second decade, with its third appearance in this court,[1] we must review the Rental Housing Commission's decision holding Robert McCulloch liable for treble damages for raising rent, based on a hardship petition, when the rental unit was not in substantial compliance with the housing code. Finding no error, we affirm.

## I.

On March 18, 1980, McCulloch filed a hardship petition[2] for authority to increase the monthly rent of his tenants at 1428–30 A Street, S.E., Mr. & Mrs. William Hawkins, Jr., from $66.50 to $206.00. In May 1980, as part of the petition process, an official inspection resulted in a housing violation notice, #871562, for noncompliance with code provisions. On August 19, 1980, the Rent Administrator granted McCulloch a provisional rent increase which McCulloch could not implement until he cured all code violations and filed an appropriate abatement notice with the Rental Accommodations Office. On August 28, 1980, McCulloch notified the tenants of a rent increase effective October 1, 1980. He filed the required abatement notice on September 30. On October 1, 1980, a housing inspector found additional code violations

and served notice #764210 on McCulloch to correct them. (The October 1 violations are not a focus of this dispute.)

On February 13, 1981, the tenants asked the Rental Housing Commission for a show cause order, alleging that McCulloch had implemented the rent increase while substantial housing code violations persisted. In particular, the tenants stated that although, according to McCulloch's abatement report, forty violations specified in notice #871562 had been abated, several "substantial" violations remained and, therefore, no rent increase could be implemented. Specifically, the tenants complained about three violations enumerated in notice #871562:

39. Cooking Room—Window does not fit reasonably well in frame.

40. Cooking Room—Window sash has defective part(s).

43. Rear Porch Roof has leak(s).

At a show cause hearing before a hearing examiner from the Rental Accommodations Office on March 17, 1981 (at which the tenants were denied full participation), Inspector/Supervisor Williams testified that all housing code violations had been abated before December 9, 1980. He further testified that, although the three violations cited by the tenants remained after McCulloch had filed his September 30 abatement notice, those violations were minor and did not impair the health, safety, or welfare of the tenants. On August 28, 1981, the hearing examiner dismissed the show cause order and ruled on behalf of the Rent Administrator that McCulloch had complied with the August 19, 1980 order authorizing the hardship increase. The examiner premised her decision on the finding that McCulloch had abated "all *substantial violations*" (emphasis in original), relying on Williams' confirmation that the three violations exist-

1. *Hawkins v. District of Columbia Rental Hous. Comm'n,* No. 82–1606 (D.C. Oct. 17, 1983); *McCulloch v. District of Columbia Rental Hous. Comm'n,* No. 85–429 (D.C. Sept. 26, 1985).

2. In 1980, a landlord could seek a rental increase by filing a hardship petition when the permitted statutory profit could not be achieved because of increased expense, if the landlord was limited to the statutorily prescribed maxi-

mum yearly rental increase. *See Chapin St. v. District of Columbia Rental Hous. Comm'n,* 466 A.2d 414, 415 (D.C.1983); D.C.Code §§ 45–1687(a), –1693 (Supp. VII 1980) (expired 1981); *see generally J. Parreco & Son v. District of Columbia Rental Hous. Comm'n,* 567 A.2d 43 (D.C.1989) (explaining philosophy of rent control laws and hardship petitions).

ing after McCulloch had filed his abatement notice were minor and that, in any event, all violations, "substantial and minor," had been abated by December 9, 1980.

The tenants appealed the Rent Administrator's ruling to the Rental Housing Commission and also requested a stay from the Commission. After a hearing on April 1, 1982, the Commission ruled on December 3, 1982 that the examiner had not abused her discretion in limiting the tenants' participation at the March 17, 1981 hearing and that McCulloch had properly implemented the hardship increase because the statute required only "substantial compliance" with the housing regulations.

The tenants then appealed to this court. On October 17, 1983, in a brief per curiam order, we concluded that "1) petitioners-tenants were erroneously denied the right to be heard as parties at the show cause hearing and 2) no record of that hearing is available." We therefore reversed and remanded the Commission's decision, ordering the hearing reopened for "evidence on the existence and abatement of any housing code violations" relevant to McCulloch's hardship petition.[3] After the hearing on remand, the hearing examiner ruled on behalf of the Rent Administrator on April 23, 1984 that the three violations from notice #871562 unabated as of September 30, 1980, as well as those listed in notice #764210, were not "substantial housing violations" and that the rental unit had been in "substantial compliance" with the housing regulations when the rent increase was implemented on October 1, 1980.

The tenants appealed, once again, to the Commission. After a hearing in October 1984, the Commission issued a decision on March 25, 1985 reversing the Rent Administrator's ruling. The Commission held, as a matter of law, that the three violations cited by the tenants from notice #871562, unabated as of September 30, 1980, "have

been regarded as substantial through the Rental Housing Act[s] of 1977 and 1980." The Commission remanded the case to the Rent Administrator "for assessment of the refund and/or rollback due the tenants."[4]

For a third time a hearing examiner heard this case. On October 29, 1987, the examiner ordered McCulloch to pay the tenants treble damages totalling $3,166. McCulloch appealed. On October 25, 1989, the Rental Housing Commission affirmed that award. McCulloch now appeals both the Commission's March 25, 1985 order that the specified housing code violations were "substantial" and the October 25, 1989 decision affirming the award of treble damages.

## II.

McCulloch initially questions his liability for damages attributable to non-compliance with the housing regulations after September 30, 1980, during the period he implemented the hardship rental increase. Before evaluating this argument, we outline the statutory scheme governing this appeal, as well as our standard of review.

### A.

Under the Rental Housing Act of 1977,[5] a landlord was not entitled to a hardship rent increase unless the rental unit was in "substantial compliance" with the housing code. See D.C.Code § 45–1689(a)(1) (Supp. VII 1980) (expired 1981). Substantial compliance was defined as the absence of substantial code violations. See id. § 45–1689(b)(1). "Substantial violation" was defined as:

the presence of any housing condition, the existence of which, violates the District of Columbia Housing Regulations, or any other statute or regulation relative to the condition of residential premises and may endanger or materially im-

3. Hawkins, supra, note 1.

4. McCulloch immediately filed with this court a notice of appeal, which we dismissed for lack of a final order. See McCulloch, supra note 1.

5. D.C.Law 2–54, D.C.Code §§ 45–1681 et seq. (Supp. VII 1980) (expired 1981).

pair the health and safety of any tenant or person occupying the property.

D.C.Code § 45–1681(bb) (Supp. VII 1980) (expired 1981).

Similarly, the Rental Housing Act of 1980 [6] also forbade hardship rent increases unless the rental unit was in substantial compliance with the housing code, as evidenced by the absence of substantial violations. *See* D.C.Code §§ 45–1519(a)(1)(A), –(a)(2), –(b)(1) (1981) (expired 1985). The 1980 Act defined "substantial violation" in a manner similar to the definition under the 1977 Act. *See* D.C.Code § 45–1503(29) (1981) (expired 1985).[7] Under both the 1977 and 1980 Acts, therefore, a landlord could not implement a hardship increase if the rental unit had substantial violations of the housing code.

In 1983, the Rental Housing Commission issued regulations under the 1980 Act. 14 DCMR §§ 3000 *et seq.* (1985). These regulations provided that a hardship petition could be granted only if the housing unit was in "substantial compliance" with the housing code. 14 DCMR § 3504.1 (1985).[8] The regulations defined substantial compliance as "the absence of any substantial housing violations" and, for the first time, enumerated the kinds of violations that would be disqualifying, such as ill-fitting windows.[9]

The 1977 and 1980 Acts guide this case because the relevant time period was from March 18, 1980 (when the landlord filed the hardship petition) until September 30, 1982 (when the tenants moved from the disputed apartment). The 1977 Act was in force until April 30, 1981; the 1980 Act took effect on May 1, 1981 and expired in 1985.[10] Thus, the period in dispute is covered by both Acts. The Rental Housing Commission, in its March 25, 1985 ruling, did not distinguish between the 1977 and 1980 Acts, apparently because there is no salient difference between them for purposes of evaluating the impact of code violations on a hardship petition. The parties do not suggest any relevant differences between these Acts for purposes of this appeal, and we make no judgment concerning any possible differences, however subtle, between the Acts in the present context.

Before applying the regulatory scheme to this dispute we note that our review, necessarily, is deferential, *see Boer v. District of Columbia Rental Hous. Comm'n,* 564 A.2d 54, 57–58 (D.C.1989); we must defer to an agency's interpretation of the statute it administers, as long as that interpretation is reasonable and not plainly wrong or inconsistent with its legislative purpose. *See Hija Lee Yu v. District of Columbia Rental Hous. Comm'n,* 505 A.2d 1310, 1312 (D.C.1986); *Remin v. District of Columbia Rental Hous.*

6. D.C.Law 3–131, D.C.Code §§ 45–1501 *et seq.* (1981) (expired 1985).

7. D.C.Law 3–131, § 103(29), D.C.Code § 45–1503(29) (1981) (expired 1985):

"Substantial violation" means the presence of any housing condition, the existence of which violates the housing regulations, or any other statute or regulation relative to the condition of residential premises and may endanger or materially impair the health and safety of any tenant or person occupying the property.

8. 14 DCMR § 3504.1 provides:

No increases in rent under D.C.Code [1981] § 45–1517 and § 45–1518 shall be authorized or permitted for any rental unit unless that unit and the common elements are in substantial compliance with [the] Housing Code of the District of Columbia (Chapters 1–19 of this *title).*

9. 14 DCMR § 3504.2 provides:

For purposes of this subtitle, substantial compliance with the Housing Code means the absence of any substantial housing violations as defined in D.C.Code, § 45–1503(29) including, but not limited to, the following:

\* \* \* \* \* \*

(p) Doors or windows which are not sufficiently tight to maintain the required temperature or to prevent excessive heat loss[.]

10. This court has noted:

The Rental Housing Act of 1977 ("the 1977 Act") expired on April 30, 1981. *See* D.C.Law 2–54, § 906, 24 D.C.Reg. 5414 (1977), *as amended,* D.C.Law 3–106, § 2, 27 D.C.Reg. 3758, 4388 (1980). Its successor, the Rental Housing Act of 1980 ("the 1980 Act"), became law on March 4, 1981, 28 D.C.Reg. 1167 (1981), but it did not take effect until May 1, 1981, upon the expiration of its 1977 predecessor. *See* D.C.Code § 45–1596(a) (1985 Supp.). *Hija Lee Yu v. District of Columbia Rental Hous. Comm'n,* 505 A.2d 1310, 1311 (D.C.1986).

*Comm'n,* 471 A.2d 275, 279 (D.C.1984). Similarly, we defer to the agency's interpretation of its own rules absent a showing that the interpretation "is clearly erroneous or inconsistent with the rules themselves." *Hija Lee Yu,* 505 A.2d at 1312. With these standards in mind, we turn to McCulloch's arguments.[11]

### B.

McCulloch contends the Commission erred in its March 25, 1985 decision reversing the April 23, 1984 Rent Administrator's ruling that the rental unit was in substantial compliance with the housing regulations, within the meaning of the 1977 and 1980 Acts. He argues, more specifically, that an administrative factfinder's decision "will be upheld unless it is irrational or an abuse of discretion," *Chapin St. v. District of Columbia Rental Hous. Comm'n,* 466 A.2d 414, 415 (D.C.1983) (citation omitted); that the Commission violated this rule of deference by ignoring evidence which fully supported the hearing examiner and by making the Commission's own findings of fact, rather than reviewing for arbitrariness or substantial evidence as required, *see id.;* and that the Commission accordingly went beyond its appropriate reviewing function. *See Smith v. District of Columbia Rental Accom. Comm'n,* 411 A.2d 612, 617 (D.C.1980) (Commission may not make findings of fact and is limited to review of Administrator's decision); *Meier v. District of Columbia Rental Accom. Comm'n,* 372 A.2d 566, 568 (D.C.1977) (Commission may only review Administrator's decisions for abuse of discretion, not in accordance with law, or unsupported by substantial evidence on record). McCulloch challenges in particular the Commission's ruling that the code violations were substantial, that the building was therefore not in substantial compliance with the · housing code, and that McCulloch as a re-

sult was not entitled to raise the rent. We find these challenges unpersuasive.

▬▬ The Commission was responsible for interpreting and implementing the Rental Housing Act of 1977 and the Rent Control Act of 1980. *See Hija Lee Yu,* 505 A.2d at 1311. In that capacity, the Commission was empowered to reverse the Rent Administrator's decisions that did not conform to the Acts' requirements. *See* D.C.Code § 45–1527(g) (1981) (expired 1985); D.C.Code § 45–1695(g) (Supp. VII 1980) (expired 1981); *Meier,* 372 A.2d at 568. Although, as McCulloch correctly argues, the Commission could not lawfully make its own findings of fact, *see id.; Smith,* 411 A.2d at 617, it had authority to conclude as a matter of law that the Rent Administrator's findings were either incorrect in light of statutory meaning, insufficient in light of statutory mandate, or unsupported by substantial evidence of record. *See* D.C.Code § 45–1527(g) (1981) (expired 1985); D.C.Code § 45–1695(g) (Supp. VII 1980) (expired 1981); *Smith,* 411 A.2d at 617; *Meier,* 372 A.2d at 568. In this instance, the Commission ruled that "these violations have been regarded as substantial through the Rental Housing Act[s] of 1977 and 1980." Decision and Order, Mar. 25, 1985 at 2. This was tantamount to holding that the facts adduced before the hearing examiner were insufficient, as a matter of law, to support a conclusion that the violations were not substantial. The Commission was entitled to do so, and we see no basis for second-guessing the Commission's determination.

### C.

▬▬ McCulloch next contends that the Commission incorrectly applied regulation 14 DCMR § 3504.2 (1985)—promulgated in 1983—to facts properly assessed in 1980. He argues, more specifically, that § 3504.2 changed the law which had been applicable

---

11. McCulloch's argument that the "law of the case" doctrine requires reversal based on the Commission's first decision of December 3, 1982 has no merit. The Commission's conclusion at that time that the law required only "substantial compliance" with the housing regulations and that McCulloch had met that test were erased, as

a matter of law, by this court's remand order nullifying the show cause hearing on the ground that the tenants had been erroneously denied their right to be heard. *See Hawkins, supra* note 1. Thus, there was no "law of the case" until the Commission's second ruling on March 25, 1985.

to hardship petitions when he filed his petition in 1980. He claims that this regulation required for the first time, before a hardship petition could be granted, a finding that the violations were not substantial rather than the previously required, lesser finding that there was, in general, substantial compliance with the housing regulations despite particular violations. We reject McCulloch's analysis; he is not correct that the Commission applied § 3504.02, or, in any event, that the 1977 and 1980 Acts' requirement of "substantial compliance" was a lesser standard before 1983.

In its March 25, 1985 decision the Commission did not base its conclusions on the 1983 regulations, as such, but rather on the 1977 and 1980 Acts.

> On appeal the tenants state that the Commission through regulations has codified that these violations are substantial in nature. We agree. In Section 3504.2, 18 different violations are listed which are considered substantial. Violation numbers 39 and 40 are cited at 3504.2(p).
> The regulations did not become effective until December 2, 1983. Nevertheless, these violations have been regarded as substantial through the Rental Housing Act[s] of 1977 and 1980. Ill-fitting windows allow drafts of cold air to penetrate the accommodation. This affects the health and welfare of the occupants; leaking roofs constitute a health hazard as well.

Decision and Order, Mar. 25, 1985 at 2. We understand the Commission to mean that, although the 1983 regulations expressly characterized as "substantial" the particular kinds of violations at issue here, the 1977 and 1980 Acts also deemed such violations to be substantial; *i.e.,* they adversely affected the health and welfare of the occupants and thus constituted a health

hazard. *See* Rental Housing Act of 1980, D.C.Code § 45–1519(a)(2) (1981) (expired 1985); Rental Housing Act of 1977, D.C. Code § 45–1689(a)(2) (Supp. VII 1980) (expired 1981). Given our deferential standard of review, *see Boer,* 564 A.2d at 57–58, we find no basis for concluding that the Commission's interpretation of the 1977 and 1980 Acts was unreasonable; we cannot say ill-fitting windows and leaky roofs could not constitute health hazards as a matter of law.[12]

### III.

McCulloch also challenges the Commission's approval of treble damages based on Rental Housing Act of 1980, D.C.Code § 45–1591(a) (1981) (expired 1985).[13] The Commission cites one of its previous decisions, *Binder v. Heiligh,* TR 11,427 (RHC 7 Feb. 1985), to support its position that "under the 1980 Act treble damages [are] the rule and not the exception. The hearing examiner must find exceptional circumstances to mitigate against the award of treble damages." Decision and Order, Oct. 25, 1989 at 7.

■ We owe special deference to the Commission's interpretation of the statute, as well as to its interpretation of the regulations it promulgates, "unless the interpretations are unreasonable." *Quality Management, Inc. v. District of Columbia Rental Hous. Comm'n,* 505 A.2d 73, 75 (D.C.1986) (quoting *Charles E. Smith Management, Inc. v. District of Columbia Rental Hous. Comm'n,* 492 A.2d 875, 877 (D.C.1985)); *see DeLevay v. District of Columbia Rental Accom. Comm'n,* 411 A.2d 354, 359 (D.C.1980). The plain language of the statute provides for three remedies: a refund or treble damages and/or a rent rollback. *See* Rental Housing Act of 1980, D.C.Code § 45–1591(a) (1981) (expired

---

**12.** D.C.Code §§ 45–1519(a)(1)(A), –(a)(2), –(b)(1) (1981) (expired 1985); D.C.Code §§ 45–1689(a)(1), –(a)(2), –(b)(1) (Supp. VII 1980) (expired 1981).

**13.** D.C.Code § 45–1591(a) (1981) (expired 1985) provides:

(a) Any person who knowingly: (1) Demands or receives any rent for a rental unit in excess

of the maximum allowable rent applicable to that rental unit ...; or (2) substantially reduces or eliminates related services ... shall be held liable ... for the amount by which the rent exceeds the applicable rent ceiling or for treble that amount and/or for a roll back of the rent....

1985). The statute does not dictate how the Commission should exercise its discretion in choosing from among these remedies. We cannot say that the Commission's interpretation—that exceptional circumstances are required to avoid treble damages—is unreasonable.

■ Finally, "there is sufficient evidence in the record to support the Commission's decision to award treble damages." *McCulloch v. District of Columbia Rental Accom. Comm'n,* 449 A.2d 1072, 1074 (D.C.1982). We cannot fault the Commission's October 25, 1989 Decision and Order, which concludes: "[t]he record here does not reflect the exceptional circumstances necessary to justify the award of single damages." Nor can we say on this record that McCulloch did not "knowingly" violate the statute as properly interpreted. *See Quality Management,* 505 A.2d at 75 ("term 'knowingly' imports only a knowledge of the essential facts bringing petitioner's conduct within the reach of § 45–1591(a)").

*Affirmed.*