**CAFRITZ COMPANY, Petitioner,**

v.

**DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, Respondent.**

**Joseph ROGERS, Petitioner,**

v.

**DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, Respondent.**

Nos. 91–AA–845, 91–AA–859.

District of Columbia Court of Appeals.

Argued Sept. 4, 1992.
Decided Oct. 16, 1992.
As Changed Oct. 27, 1992.

John J. Brennan, III, with whom Jo V. Morgan, Jr. and Robert Clayton Cooper, Washington, D.C., were on the brief, for petitioner Cafritz Co.

Joseph Rogers, pro se.

Donna M. Murasky, Asst. Corp. Counsel, with whom John Peyton, Corp. Counsel, along with Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the memorandum in lieu of brief, for respondent in No. 91–AA–845.

Richard W. Luchs, with whom Abraham J. Greenstein and Vincent Mark J. Policy, Washington, D.C., were on the brief, for the Washington, D.C. Ass'n of Realtors, Inc. and Apartment and Office Building Ass'n of Metropolitan Washington, Inc., as amici curiae.

Before TERRY, SCHWELB and KING, Associate Judges.

KING, Associate Judge:

This matter is before the court on cross-petitions from decisions of the Rental Housing Commission (hereinafter "Commission") by Joseph Rogers ("tenant") and the Cafritz Company ("landlord"), the housing provider and intervenor before the Commission. In his appeal, the tenant seeks reversal of a finding by the Rent Administrator, affirmed by the Commission, that the landlord was entitled to a capital improvement rent increase of $30 per month. *Rogers v. District of Columbia Rental Housing Commission,* No. 91–859. In its cross-appeal, the landlord challenges the Commission's ruling that it was compelled, by holdings of this court, to automatically stay the rent increase pending final resolution on appeal. *Cafritz Company v. District of Columbia Rental Housing Commissioner,* No. 91–845. We affirm the Commission's finding permitting the rent increase. We reverse the Commission's order imposing an automatic stay of the Rent Administrator's decision ordering the rent increase.

These cases involve a rent increase request at a forty-five year old, 164–unit apartment house, located at 2000 Connecticut Avenue, N.W. Pursuant to the Rental Housing Act of 1985 ("Rental Housing Act") the landlord filed a petition seeking a rent increase to cover the costs of a capital improvement proposal for the replacement of the original elevators and boiler mechanical plant, and for the installation of emergency generators. The expected cost of the improvements exceeded $350,000, and the landlord requested approval of a $30 per-month, per-unit rent increase. A contested hearing was conducted in July 1989 with only Rogers and the Tenant Association ("Association") appearing in opposition. At the conclusion of the hearing the landlord and the Association entered into a settlement agreement, pursuant to which the latter withdrew its opposition to the rent increase request.

In March 1990 the Rent Administrator issued a final decision, granting the petition in full, which permitted the landlord to proceed with the capital improvements and

implement the rent increase once the improvements were completed and paid for. The decision of the Rent Administrator was appealed to the Commission by Rogers. Thereafter, in September 1990, the improvements were completed, and the rent increase was implemented in October 1990.

In April 1990, Rogers moved to stay the Rent Administrator's decision pending appeal; however, the landlord never received notice that the motion had been filed. The Commission denied the motion, concluding that it need not reach the merits of Rogers's request because, based upon its interpretation of two cases previously decided by this court, it was compelled to hold that a stay was automatic. Neither the landlord nor the tenant received notice of that ruling by the Commission, and the tenant began paying the rent increase in October 1990 when it was implemented after the completion of the improvements.

A hearing on Rogers's appeal was held before the Commission in May 1991, during which both the landlord and the tenant learned, for the first time, that the Commission had previously ruled that the rent increase should be automatically stayed. Thereafter Rogers ceased paying the rent increase. Cafritz's motion for reconsideration of the order ordering the stay was denied, with the Commission reiterating that it considered itself bound, by the two cases mentioned earlier, to hold that a stay was automatic. The appeal in No. 91–845 followed. Subsequently the Commission issued an order affirming, in all respects, the Rent Administrator's decision with respect

to the rent increase. The appeal by Rogers in No. 91–859 followed.

### Tenant's Appeal

■ The tenant makes three claims: (1) the new elevators and boiler, that replaced the old ones, cannot qualify as capital improvement under the Rental Housing Act; (2) it was error to permit a rent increase to cover the cost of replacement of the elevators and boiler since the cost of the original elevators and boiler had been recovered by depreciation; and (3) it was error to reject Rogers's claim that a rent increase was unwarranted for the new equipment, since provision of a working boiler and elevators was required as part of the contract originally agreed to when the tenant moved into the housing accommodation.

Only the first claim[1] merits more than summary discussion. That claim is based upon the tenant's reading of a definitional provision applicable to the rent increase request. The Rental Housing Act allows a rent increase to cover the cost of a capital improvement. Further, the Rental Housing Act provides that:

> "Capital improvement" means an improvement or renovation other than ordinary repair, *replacement* or maintenance if the improvement or renovation is deemed depreciable under the Internal Revenue Code (26 U.S.C.).

D.C.Code § 45–2503(6) (emphasis supplied).

The tenant argues that the boiler and elevators were "replacements"—a fact

---

1. Both of the tenant's other claims are completely without merit. First, he argues that, since the landlord was able to depreciate the equipment replaced, he should not be permitted to recover the cost of replacement equipment by a rent increase. The tenant has cited no case, and we are aware of none, which would support that contention. Moreover, the legislature has expressly authorized recovery of the cost of the new equipment, *see* D.C.Code § 45–2520(a), by a rent increase under the circumstances presented here. *Accord, Tenants of 549 Rental Units of Fort Chaplin v. Fort Chaplin Park Associates,* C/I 20, 153 (August 19, 1988).

Second, the tenant claims the Commission erred when it declined to consider his proffered evidence, in the form of the lease between him and the landlord, that the equipment to be re-

placed constituted part of the agreement between the parties, *i.e.,* the landlord was obligated to provide the services made possible by the elevator and boiler, and should, therefore, not be permitted to raise the rent to recover the cost of replacement of that equipment. The landlord does not contend that it is not obligated to provide hot water, heat, and elevator service. That obligation, however, does not bar the landlord's statutory entitlement to recover the cost of replacement of the equipment to provide those services by implementing a rent increase. Again, the tenant cites no authority to support his theory, and we know of none. *But see Columbia Realty Venture v. D.C. Rental Housing Commission,* 590 A.2d 1043 (D.C.1991) (hot and cold water riser replacements are capital improvements).

which is not disputed by the landlord. Therefore, argues the tenant: since pursuant to § 2503(6) a "replacement" is excepted from the definition of capital improvement, and since it is undisputed that the boiler and elevators were replacements, it follows that the installation of the new boiler and elevators in this case cannot constitute a capital improvement.

■ The flaw in the tenant's analysis is his unwillingness to acknowledge that the noun "replacement" in § 2503(6) is limited by the antecedent adjective "ordinary." Thus a renovation or improvement that is excluded from the definition of capital improvements is an "ordinary replacement," not just any "replacement". That is the interpretation that has been made by the Commission, and we customarily accord great weight and deference to such interpretations. *Columbia Realty Venture v. District of Columbia Rental Housing Commission, supra* note 1, 590 A.2d at 1046; *McCulloch v. District of Columbia Rental Housing Commission,* 584 A.2d 1244, 1248 (D.C.1991) (court defers to agency's interpretation of the statute it administers, so long as the interpretation is reasonable and not plainly wrong).

The Commission has held, for example, that replacement of individual unit heaters and air conditioning equipment were not "ordinary replacements" and thus qualified as capital improvements. *Tenants of 549 Rental Units of Fort Chaplin, supra* note 1. Moreover, the Commission has on a number of occasions held that new appliances are not "ordinary replacements," and therefore, they too qualify as capital improvements.[2] It follows *a fortiori* that, if individual appliances qualify as capital improvements, then a major renovation, that includes the installation of new elevators and a complete new building heating system, would qualify as well.

We find no basis for concluding that the Commission's interpretation of the statute

is unreasonable, plainly wrong, or inconsistent with the statute's purpose. *McCulloch, supra,* 584 A.2d at 1248. Accordingly, we hold that the Commission's holding that the renovations made here constitute a capital improvement is fully supportable, and that the tenant's challenge must fail.

*Landlord's Appeal*

■ As noted earlier, after the adverse decision by the Rent Administrator, and prior to the completion of the improvements, the tenant appealed to the Commission. He also moved for a stay of the implementation of the rent increase pending final determination by the Commission on the issues raised in the appeal. For reasons that are unexplained by the record, the landlord was never made aware of Rogers's request for a stay. The Commission denied the motion on September 24, 1990, ruling that a stay was automatic with the filing of the appeal by the tenant. Neither the tenant nor the landlord was informed of that ruling. Meanwhile, the landlord completed the renovations and implemented the rent increase. As a result, the tenant began paying the increased rent in October 1990.

At the Commission hearing in May 1991, the landlord and the tenant learned, for the first time, that the Commission had decided that the Rent Administrator's order increasing the rent was automatically stayed. The landlord's subsequent motion for reconsideration of that order was denied. The Commission held, in both its original order and in the order denying the motion for reconsideration, that any rent increase must be stayed while the matter is on appeal. The Commission concluded that it was compelled to reach that result because of the holdings in *Strand v. Frenkel,* 500 A.2d 1368 (D.C.1985), and *Hanson v. District of Columbia Rental Housing Commission,* 584 A.2d 592 (D.C.1991).

---

**2.** *See also Modern Property Management, Inc. v. Tenant, 1833 Summit Place, N.W.,* C/I 20, 370 (RHC, June 2, 1989) (refrigerator); *Modern Property Management, Inc. v. Minott,* C/I 20, 245 (RHC, June 1, 1989) (refrigerator); *Vega Inv. Corp. v. Tenant of 1712 16th Street, N.W.,* C/I 20, 326 (RHC, June 1, 1989) (refrigerator); *Vega Inv. Corp. v. McElroy,* C/I 20, 213 (RHC, June 1, 1989) (refrigerator); *Brandywine Tenants Assoc. v. Charles E. Smith Management, Inc.,* C/I 20, 055 (RHC, May 31, 1989) (stoves).

The landlord argues that the Commission reads *Strand* and *Hanson* too broadly, and that it should not have applied the holding of those cases to the circumstances presented here.[3] The landlord also contends, if we agree with the Commission's conclusion that the two cases should apply to this case, that *Strand* and *Hanson* should be overruled. On the other hand, the Corporation Counsel, on behalf of the Commission, argues that although *Strand* and *Hanson* were properly applied by the Commission, both cases were wrongly decided by this court. The Corporation Counsel urges, therefore, that the two cases be overruled by the court sitting en banc because the rule established by those cases "not only undermines the authority of the District's administrative agencies, but is likely to increase appeals of administrative decisions because a losing party may have a great deal to gain by delay." As the parties recognize, this division is not empowered to overrule either case. Only the en banc court may do so. *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971).

We agree with the Corporation Counsel that the Commission's interpretation of *Strand* and *Hanson* would have an adverse impact upon the implementation of the Rental Housing Act. We do not agree, however, with the government's contention that the Commission was compelled by those cases to conclude that a stay would be automatic under the circumstances presented here. Rather, we hold that there is nothing in either *Strand* or *Hanson* that requires an automatic stay of a rent increase such as the one that was ordered in this case by the Rent Administrator on behalf of the landlord. Indeed, the statutory provisions governing capital improvement rent increases would indicate that the rent increase should be implemented once the improvements are completed.

We will first examine the facts underlying *Strand* and *Hanson* before turning to an analysis of those cases, and the reasons we conclude that the holdings should not apply to the rent increase sought here. Both *Strand* and *Hanson* involved disputes

between tenants and landlords over claimed rent overcharges. The *Strand* case began with a petition filed by the tenant before the Rental Accommodation Office (RAO—now the Rent Administrator) seeking a refund of asserted rental overcharges. In December 1978 the RAO granted the tenants's request and awarded them some $2500 as reimbursement for rent overcharges. The award was appealed by the landlord, and the RAO's order was stayed by the Commission on condition that the landlord place the refund amount in escrow. The landlord did not comply with that requirement. Subsequently, the Commission affirmed the RAO's award and that ruling was appealed by the landlord to this court. After we remanded, a re-calculation of the overcharge amount resulted in an order directing the landlord to pay the tenant a rent overcharge of nearly $7000. That award became final in July 1983 when the landlord elected not to appeal further.

Meanwhile, in January 1983, the tenant filed a civil action in the Superior Court seeking enforcement of the overcharge awarded. The landlord sought dismissal, claiming that the complaint was filed beyond the time required by the statute of limitations. The landlord contended that the cause of action arose when the RAO initially found that there was an overcharge in December 1978. Since, argued the landlord, the enforcement action was not filed until January 1983, it was barred by the three year statute of limitations. *See* D.C.Code § 12–301(8)(1989). The trial court agreed and granted the motion to dismiss. The tenant then appealed to this court.

We reversed. Preliminarily we observed that, under the circumstances, there were two distinct causes of action: (1) the administrative proceeding to establish liability for the rental overcharge, and (2) the later court action to enforce, *i.e.,* collect, the administratively determined liability. We observed further that, since there could be no enforcement in court until the actual amount of overcharge had been finally determined by the agency (and if requested

---

**3.** This view is shared by *amici curiae.*

after appellate court review), the second cause of action did not accrue until the agency action was completed. Accordingly, we held that "the statute of limitations on an enforcement action does not begin to run—since it has not accrued—until the underlying merits of the claim have been finally adjudicated and thus merged into the final judgment." *Strand, supra,* 500 A.2d at 1373.

*Hanson* also involved a claim by tenants that they had been overcharged by the landlord. The landlord in *Hanson* met the "small landlord" definition in the Rental Housing Act of 1980 which would ordinarily provide an exemption from rent control restrictions.[4] The landlord, however, had failed to file the appropriate claim of exemption from rent control, required by D.C.Code § 45–1516(a)(3) (1981). The tenants maintained that because of that failure they should be reimbursed for all rents paid in excess of the rent ceiling. A hearing examiner agreed with the tenants and ordered a refund of just over $25,000 but declined to treble the amount as permitted by the statute. Both the landlord and the tenant appealed to the Commission.

Before the Commission, the tenants requested dismissal of the landlord's appeal on the ground that the landlord had neither paid the claimed overcharge nor sought a stay pursuant to regulations promulgated by the Commission. The Commission denied that request concluding that, since *Strand* had held that the order to the landlord to pay money was not final for enforcement purposes, there was no need for the landlord to seek a stay because enforcement is deemed to be stayed by operation of law. *Hanson, supra,* 584 A.2d at 594. On the merits, the Commission reversed the decision of the hearing examiner and found that under the circumstance presented the landlord was exempt from rent control. The tenants appealed to this court claiming, *inter alia,* that the Commission should have dismissed the appeal by the landlord because the landlord did not comply with the Commission's regulations relating to stays.

We rejected that appeal on two separate and distinct grounds. First, we concluded, as the Commission had, that since *Strand* had held that the agency decision was not enforceable until appellate review had been exhausted, there was no need for a stay. We found that the Commission's regulations relating to stays were unnecessary since the hearing examiner's finding, not being enforceable, was automatically stayed. *Hanson, supra,* 584 A.2d at 595. In sum, we concluded that, because the rent overcharge award could not yet be enforced, no stay of enforcement action was necessary. Second, we held that even if the Commission regulations were violated, dismissal was not necessarily required since the Commission regulations provide that even though there has been a failure to abide by the stay requirement, the Commission shall nonetheless "hear and decide the appeal," *id.* (citing 14 DCMR § 3302–8 (1983)), and refer any non-compliance with its regulations to the Rent Administrator for action. *Id.*

*Strand* and *Hanson* both dealt with claimed overcharges by the landlord of rents previously paid by the tenant. In each, the hearing examiner in the initial fact-finding proceeding concluded that the tenants were due a rent rebate because of overcharges by the landlord. In both cases we concluded that the tenant could not enforce the order of reimbursement until all administrative and judicial appeals were exhausted and the actual amount due, if any, was finally established. The soundness of that conclusion is demonstrated by what occurred subsequent to the hearing examiner's initial awards to the tenants. In both cases the amounts initially determined were ultimately modified in significant respects. In *Strand* the final amount was three times that initially found by the hearing examiner. In *Hanson,* the Commission found, and we affirmed that finding, that the landlord was not liable at all—

---

4. A "small landlord" is essentially one who owns four or fewer units. D.C.Code § 45–1516(a)(3) (1981).

thus reversing the $25,000–plus award of the hearing examiner.

 The Commission has chosen to apply the principles set forth in *Strand* and *Hanson,* which are applicable to inchoate rights of tenants to recover past rent overcharges, to situations, such as that presented here, where the landlord is seeking a statutorily approved rent increase to be implemented in the future. There is nothing in either *Strand* or *Hanson* suggesting that the holdings of those cases would apply to capital improvement rent increase requests, and we can find no basis for the Commission's conclusions that they should.[5] As noted earlier, we ordinarily defer to a Commission interpretation of the statutes governing its operations and the regulations promulgated by it. *Columbia Realty Venture, supra* note 1, 590 A.2d at 1046; *McCulloch, supra,* 584 A.2d at 1248; *Boer v. District of Columbia Rental Housing Commission,* 564 A.2d 54, 57–58 (D.C.1989); *Hija Lee Yu v. District of Columbia Rental Housing Commission,* 505 A.2d 1310, 1312 (D.C.1986); *Remin v. District of Columbia Rental Housing Commission,* 471 A.2d 275, 279 (D.C.1984). We owe no deference, however, to the Commission's interpretation of cases decided by courts. *Phillips Petroleum Company v. Federal Energy Regulatory Commission,* 253 U.S.App.D.C. 211, 215–216, 792 F.2d 1165, 1169–70 (1986) (no deference accorded agency's erroneous interpretation of the applicability of a Supreme Court decision); *Walker Operating Corporation v. Federal Energy Regulatory Commission,* 874 F.2d 1320, 1332 (10th Cir.) (same; interpretation of state law), *cert. denied,* 493 U.S. 954, 110 S.Ct. 365, 107 L.Ed.2d 352 (1989); *accord, Prill v. National Labor Relations*

*Board,* 244 U.S.App.D.C. 42, 48, 755 F.2d 941, 947, *cert. denied,* 474 U.S. 948, 106 S.Ct. 313, 88 L.Ed.2d 294 (1985); *Saah v. District of Columbia Board of Zoning Adjustment,* 433 A.2d 1114, 1116 (D.C. 1981) (when agency decision rests on question of law, reviewing court has more expertise and agency decision accorded less deference). We conclude that the Commission has misapplied the rulings of *Strand* and *Hanson* by holding that those cases compel it to automatically stay the implementation of a capital improvement rent increase.

We begin our analysis by examining the statutory provisions authorizing capital improvement rent increases. Rent increases, not to exceed 20% above the existing rent ceiling, are authorized for capital improvements that enhance health, safety, security, or habitability of the accommodation, or effect a saving in energy use. D.C.Code § 45–2520(a)(1)(2). Any request for a rent adjustment must be resolved within 60 days of the filing of the application by the landlord. If the request is not resolved within that period, the landlord is free to proceed with the capital improvements. D.C.Code § 45–2520(e). Regulations promulgated by the Commission, pursuant to these provisions, contemplate that the rent increase can be implemented pursuant to a final order of the Rent Administrator approving the capital improvement. *See generally* 14 DCMR §§ 3802.10, 3802.11, 4204.-10, 4210.13, and 4210.14. Thus, the Commission, in its own regulations, recognizes that the statute authorizing capital improvement rent increases anticipates that such rent increases are to be implemented immediately. As noted previously, we ordinarily do defer to the Commission's interpretation of statutes governing its opera-

---

**5.** We have pointedly noted on at least two recent occasions that our decisions must be read in the context of the facts presented in those cases. *See Khiem v. United States,* 612 A.2d 160, 164 (1992) (on rehearing) and *United States v. Alston,* 580 A.2d 587, 594 n. 12 (D.C.1990), where we criticized the tendency to interpret our holdings as establishing hard and fast rules with broad application beyond the case decided. *See also Armour & Co. v. Wantock,* 323 U.S. 126, 132–33, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944), where the Supreme Court observed:

> It is timely again to remind counsel that words of our opinions are to be read in light of the facts of the order under discussion. To keep opinions within reasonable bounds precludes writing into them every limitation or variation which might be suggested by the circumstances of cases not before the Court. General expressions transposed to other facts are often misleading.

tions. *See Boer, supra.* Finally, we note a section of the Rental Housing Act that provides that:

No rent increase *above that authorized by the Rent Administrator* may be implemented by a housing provider during the rendering of an appeal by the housing provider ... where the appeal concerns the validity of that increase.

D.C.Code § 45–2526(*l*) (emphasis supplied). This provision clearly anticipates and expects that *approved* rent increases may be collected pending appeal.

The unmistakable import of the statutory provisions cited above, and the regulations promulgated by the Commission pursuant to those provisions, is that the Rent Administrator is empowered to authorize the landlord to implement the rent increase once the improvements are completed. Indeed, that is precisely what occurred here. The Rent Administrator awarded the landlord a capital improvement rent increase of $30 per-month, per-unit, which the landlord was entitled to implement once the work was completed, all substantial housing code violations were abated, and a thirty-day notice given to each tenant. The Rent Administrator further directed that the decision was effective immediately and was not to be stayed by the filing of an appeal to the Commission.

In short, the statutory scheme, the administrative regulations, and the practice of the Commission all contemplated that a landlord should ordinarily be able to begin collecting a rent increase once the capital improvements were completed. If that were not the case, tenants could delay the payment of the rent increase for months, even years, while an appeal was pending. Many tenants, by relocating during the pendency of the appeal, could avoid paying the increase altogether, while enjoying the benefits accruing because of the improvements.

Moreover, the Commission recognized, when it promulgated stay provisions for rent increases being appealed, the appropriateness of requiring the tenant to either purchase a supersedeas bond, or make monthly payments in the amount of the increase into an escrow account. *See* 14 DCMR §§ 3802.10, 3802.11. The Commission went astray, however, when it concluded that our holdings in *Strand* and *Hanson* compelled it to ignore the stay provision it had promulgated in a case where the landlord sought and received a capital improvement rent increase.

In sum, we are satisfied that there is no basis for extending the rules set forth in *Strand* and *Hanson* to capital improvement rent increases such as the one approved here. We hold that the Commission's conclusion that those cases compel it to automatically stay such rent increases is unsupported. Accordingly, we reverse that part of the Commission's finding.

*Affirmed in part and reversed in part.*