WESLEY HODGES, Plaintiff and Respondent, *v.* NINA M. HODGES, by her guardian First Trust Company of Montana, Defendant and Appellant.

No. 11309.
Submitted November 30, 1967. Decided December 29, 1967.
435 P.2d 784.

Joseph R. Marra (argued), Angland, Marra and Robert Gillan (argued), Great Falls, for defendant and appellant.

Weber, Bosch & Kuhr, Fred J. Weber (argued), Havre, for plaintiff and respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

Two years after a decree of divorce and two years after the death of the divorced husband, the surviving party, through her guardian, filed a petition to set aside the divorce decree on the ground she was mentally incompetent. The hearing to set aside the decree was heard by the same district judge who granted the divorce and resulted in his refusal to grant the motion to set aside the divorce. The defendant-appellant alleges error as a matter of law.

The divorce action was filed by the husband in March of 1964 and came before the district court on August 27, 1964, on a show cause order and restraining order issued earlier to the defendant wife. The parties to the action stipulated that the district judge, in hearing the testimony, could also hear the divorce matter and decide all issues before the court.

In view of the allegations of the appellant that her mental condition at the time of the divorce was such that the original decree should be set aside, we will set forth the evidence of all the hearings. The material facts are not in dispute; we recite them only in enough detail in order to make the issue involved more clear.

Wesley and Nina Hodges were married February 4, 1952. Both had previously been married, and both had children of the previous marriages. Wesley had three children and Nina had two. Their marriage brought two more children into the

family. While little or no evidence was produced concerning Wesley's previous marriage background there was considerable background material about Nina that the trial court had for consideration. Nina was a part Indian girl who in her Senior year of high school married an alcoholic. This marriage lasted seven years ending in divorce. She married Wesley and this marriage lasted eleven years. Although the second marriage seems to have been a better marriage than the first it was subject to considerable stress after 1953 due to Nina's inability to stay away from alcohol and the places where it was sold. By 1958 her husband, Wesley, testified he would no longer take her out at night because of her addiction to drink. However this did not prevent her going out and at times returning home intoxicated with other men. Her drinking became such that she was unable to do ordinary housework and it became necessary for Wesley and the children to do both the cooking and the housework. During this period she not only became an alcoholic but added to her problem by taking numerous drugs.

Beginning in 1958, Nina was seen by a Doctor Buker of Chester and on his advice she went to Great Falls for treatment by several psychiatrists, first Dr. Gelernter in 1961 and 1962, and later Dr. Pierce. In addition, in 1962 she went to the State Hospital for treatment staying there only two weeks. Dr. Buker and others testified that during the 1958-1964 period she made several suicide attempts that were more attention getters than serious efforts to destroy herself. All of the medical and psychiatric testimony reveals that Nina was a sick and insecure human being. Dr. Gelernter describes her thus: "She is an extremely uncomfortable person, her ability to stand up under stress was extremely limited, under stress she came completely apart, at times I am sure she was psychotic, not able to deal with reality, the drugs and alcohol represented some respite, she escaped it."

These facts and many bizarre incidents, all recounted by wit-

nesses at the hearing, ultimately led to the filing of a complaint for divorce by Wesley on March 9, 1964. The complaint was based on grievous mental suffering by a course of conduct by the defendant (Nina) existing and persisted in for a period of more than one year preceding the commencement of the action. Upon being served, Nina immediately secured counsel in William Hunt of Chester and on May 7, 1964, an answer was filed denying the allegations and a counterclaim seeking a divorce in her own right. On August 24, 1964, Nina obtained a temporary restraining order and an order to show cause was issued to be heard on August 27, 1964. As previously set forth the hearing on the order to show cause was by agreement of both counsel and became a hearing on the divorce matter.

The August 27th hearing was a full hearing on the merits with some 12 witnesses, including both Wesley and Nina, testifying. Nina's testimony, some six pages, covered a number of subjects, including her finances, her husband's ranching operations, the difficulties encountered during the marriage and what she intended to do in the future. At the conclusion of the testimony the court took the matter under advisement and a month later on September 30, 1964, granted the decree of divorce to Wesley, awarded him the custody of the children and dismissed her counterclaim.

During the month between the hearing and the granting of the decree of divorce, all was not well with Nina. On September 19th she was admitted at the Chester Hospital by Dr. Buker who describes her condition as follows: "She was completely depersonalized and I think overdosed but I never found out what she was taking. I held her here in the hospital for a day and she was much brighter and clearer so I let her go." On the 22nd he stated she was in the hospital again "having made a suicide gesture, good deep cuts down to the muscle." She was hospitalized and on the 28th, sent to the State Hospital 'on an emergency admission basis.'" The record of the diagnosis at the hospital, was "Psychoneurotic, Reaction, Depres-

sive Type with Hysterical Features." She was discharged from this admission on December 18, 1964, after being home on visit. At the time of her discharge she had improved. However, counsel for the appellant emphasizes that because she was committed before the decree, but a month after the hearing, that the decree must be set aside.

On November 11, 1964, (less than a month and one-half after the decree) Wesley Hodges was killed in an automobile accident, and it was then learned that at the time of the divorce from Nina he had not changed the beneficiaries on his life insurance policies. Nina suddenly became possessed of the sum of $103,047.04 plus a vehicle valued at $1,663.75. Due to the fact she was at the State Hospital, her attorney Mr. Hunt had a guardian, a Mr. Shaeffer of Chester, Montana, appointed to protect her estate. One year later on November 24, 1965, the First Trust Company of Great Falls became Guardian for Nina Hodges and within four months moved to set aside the divorce so that Nina could further benefit from the estate as a widow. Two hearings were held by the district court, on September 22 and 28, 1966, and testimony was heard from Dr. Buker, Mr. William Hunt, Leland Hodges and Nina Hodges. Mr. Hunt testified that from the time he was employed as Nina's attorney to contest the divorce, March of 1964 to the time of the divorce, his records disclosed that he had conferred with her 29 times and had numerous telephone conversations; that during the time he acted as attorney for the guardianship, a period of one year, he conferred with her about 15 times and based on his dealings with her during this period he answered the following question:

"Q. Without going into privileged communications I would merely ask this question, during the year you acted as counsel did you discover any facts which you felt properly should have been presented to this court at the time of the divorce hearing in August 1964. A. I discovered no information that should have been brought to the attention of this Court."

██ The issue for this court's consideration is whether the trial court erred in refusing to vacate and set aside the decree of divorce originally entered on September 30, 1964.

Clearly in view of all the evidence, produced at three hearings some two years apart, the answer is no. Appellant's argument goes to her contention that appellant was insane, incompetent, and so deranged during the period leading up to the divorce, and at the time of the divorce, that she was powerless to create an attorney-client relationship and therefore the decree issued was void.

██ The proof falls far short of sustaining the argument. Throughout appellant's brief the terms "psychotic," "insane," and "incompetent" are used. These terms should not be used interchangeably. The court's finding at the guardianship hearing that she was incompetent to handle her business affairs cannot be used as proof of insanity or proof that she was psychotic.

Accepting the diagnosis of appellant's psychiatrist, Dr. Gelernter, and taking his layman's definition of a psychotic as "a psychotic diagnosis means a person is unable, at least at times, to distinguish reality from what seems to be going on, sometimes the reality is more coming from within than an interpretation of without," the record fails to show that either during the period prior to the divorce or at the hearing on the divorce she was so incapacitated as to be unable to assist her counsel in the defense of the case. True, she was a troubled soul, as are many who pass through domestic relations court actions, however, the record shows she was able to assist counsel in filing an answer and counterclaim, in preparation of a petition seeking a restraining order and in fully participating in the divorce action when it was heard. During this period she was in continuous contact with her attorney, an experienced practitioner, and although he could not qualify as a psychiatrist in the opinion of the able trial judge "if he saw her 29 times he came pretty close."

The fact she had volunteered to go to the State Hospital for a two-week period in 1962 does not show she was either insane or incompetent. Concerning the emergency commitment on September 28, 1964, the record fails to show whether at that time she was declared an insane or incompetent person at a hearing though it does indicate that the longest period she could have been at the State Hospital was two months.

As previously noted the fact that an individual has mental health problems does not per se make him or her an incompetent. Here, the guardian having alleged the conditions set forth in the motion to set aside the decree assumed the burden of proving the mental conditions alleged as existing at the time they were alleged to have existed. This they failed to do to the satisfaction of the trial court who heard all the testimony, twice heard and observed Mrs. Hodges and heard her attorney testify as to his observations. Even granting appellant's contention that Mrs. Hodges was an incompetent this court held in State ex rel. Haynes v. Dist. Ct., 106 Mont. 578, 584, 81 P.2d 422, that: "A judgment against an incompetent at the time of its rendition and not represented by a guardian is not absolutely void, but is at most merely voidable, and will be sustained when collaterally attacked." Having participated in the entire proceeding it became the trial court's duty to exercise its discretionary power as to whether the decree was voidable and this he found against the appellant's position. We find under the circumstances no abuse of this power.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES and ADAIR concur.

MR. JUSTICE HASWELL specially concurring:

I concur in the result reached by the majority. However, in my view the paramount and overriding consideration in reaching that result is never mentioned in the majority opinion.

Nina Hodges, through her guardian, seeks to set aside a divorce decree granted to her then husband, Wesley Hodges, a year and one-half previously. Irrespective of whether her attack on that decree is considered a motion for relief from the judgment under Rule 60(b) (6), M.R.Civ.P., or an independent action in equity seeking the same ends, the grant or denial of the relief she seeks is governed by equitable principles.

In applying these equitable principles, it is essential to understand the true nature of this controversy and the real parties in interest. If the divorce decree is set aside, the parties will not be restored to their original positions enabling relitigation of the issues. The divorce case can never be retried. Wesley Hodges is dead. His estate is in the process of probate. From the record, and arguments of counsel it appears that in due course, his estate will be distributed to his five children as matters now stand. It is important to note that three of these five children are not the issue of his marriage to Nina. If the divorce decree is set aside, Nina becomes Wesley's surviving widow entitling her to share in his estate and reducing the share of the children proportionately. That is what this case is all about. The real controversy is over the distributive shares in Wesley's estate and real parties in interest are Nina and the children.

Where do the equities lie as between these real parties in interest? Nina has already collected in excess of $100,000 as sole beneficiary of Wesley's life insurance policy. Nina has been adjudicated the matrimonial offender in the marriage and no appeal has been taken from that judgment. Nina has made no showing of any meritorious defense to Wesley's divorce action. The five children, on the other hand, are innocent bystanders in the marital difficulties between Wesley and Nina. But they are the ones whose rights of inheritance are jeopardized by this appeal and Nina's contentions herein, particularly the three children who are not the issue of Wesley's mar-

riage to Nina. They would be the real losers if the divorce decree were set aside.

In my view the foregoing are the real reasons why Nina's application to set aside the divorce decree must fail.