**Byron S. MITCHELL, Appellant**

v.

**Annie GALES, Appellee.**

No. 12–CV–168.

District of Columbia Court of Appeals.

Argued Nov. 21, 2012.

Decided Feb. 28, 2013.

Kyle J. Fiet, formerly of the Legal Aid Society of the District of Columbia, with whom John C. Keeney, Jr., Legal Aid Society of the District of Columbia, was on the brief, for appellant.

Craig A. Butler for appellee.

Before FISHER and EASTERLY, Associate Judges, and KING, Senior Judge.

EASTERLY, Associate Judge:

█ Byron S. Mitchell appeals from the denial of his Application for Entry of Administrative Agency's Final Order as Judgment in Superior Court. The order Mr. Mitchell sought to enter as a judgment was issued by the Office of Administrative Hearings ("OAH"), which had adjudicated Mr. Mitchell's petition for reduction of rent and had ordered his landlord, Annie Gales, to pay him $13,014.32.[1] The Superior Court denied Mr. Mitchell's application to convert the OAH order into a judgment because it determined that (1) Ms. Gales had a valid defense of res judicata based on an earlier-filed Small Claims action, in which Mr. Mitchell had also prevailed, and (2) representations that Ms. Gales had "likely" become mentally incompetent[2] at some point during the OAH litigation supplied adequate justification to permit Ms. Gales to raise this defense for the first time in a collateral proceeding.

The Superior Court's ruling was in error. Our law has long been clear that collateral attacks on prior judgments are only permitted where a challenge is made to the original tribunal's jurisdiction or an assertion is made that the original order was procured through fraud. Nothing in the record as it stands induces us to relax that rule. Thus, the appropriate forum for Ms. Gales or her representatives to raise incompetence as the reason for her failure to timely challenge the OAH order on res judicata grounds is in the OAH proceedings—not in a collateral attack on the OAH order in Superior Court. Accordingly, we reverse and remand to Superior Court with instructions to enter the OAH order as a judgment.

## I. Facts and Procedural History

In 2007, Mr. Mitchell rented an apartment from Ms. Gales for $425 per month. In May 2010, an inspector from the Inspections and Compliance Administration of the District of Columbia Department of Consumer and Regulatory Affairs inspected the unit and determined that it was not habitable due to, *inter alia,* exposed electrical wires, holes in the walls, a sewage drainage pipe that was not intact, a moldy bathroom floor, bedbugs, and mice. The subsequent dispute between Mr. Mitchell and Ms. Gales over the condition of his apartment and the money he was due in

---

1. Mr. Mitchell filed his tenant petition with the District of Columbia Rent Administrator, but the proceeding was transferred to OAH, which handles all of the Rent Administrator's adjudicated cases pursuant to D.C.Code § 2–1831.03(b–1)(1) (Supp.2009). We refer to this administrative proceeding as "the OAH proceeding," or "the OAH litigation."

2. Though Ms. Gales argues that she was "incapacitated" beginning in the summer of 2010, this language is imprecise. Incapacitation is a finding that must be made pursu-

ant to a process set out by statute, *see generally* D.C.Code §§ 21–2001 to –2098 (2001 & Supp.2009), in order for a court to appoint a guardian or a conservator. It is distinct from a finding of incompetence that a court makes when a party is unable to participate in trial. *See* D.C.Code § 21–2004 (2001). Though we use the parties' language when quoting from their briefs, we consider Ms. Gales's claim to be that she became legally incompetent at some point at or around the time of the OAH litigation.

rent refunds and damages spawned litigation in three fora: (1) a law suit in Small Claims court for breach of contract; (2) a proceeding before OAH to litigate his petition for reduction in rent filed with the Rent Administrator; and, (3) lastly, after Mr. Mitchell won in the OAH proceeding, an application in Superior Court to convert his OAH award into a judgment. It is this third proceeding that is now before us on appeal.

Mr. Mitchell first filed a complaint for breach of contract in the Small Claims branch of Superior Court on May 25, 2010 ("the Small Claims Court proceeding"). Shortly thereafter, he filed a petition for reduction in rent due to a reduction in services with the Rent Administrator on June 4, 2010 ("the OAH proceeding"). Ms. Gales was represented by counsel in the Small Claims proceeding, though apparently not in the OAH proceeding. The Small Claims proceeding resolved first when Mr. Mitchell received a $900 judgment on July 15, 2010. Six weeks later, on August 26, 2010, Ms. Gales participated in an oral exam hearing in the Small Claims Court proceeding in order to identify her assets.

More than two months after Mr. Mitchell won a judgment in Small Claims court, the OAH litigation moved forward. An evidentiary hearing in the OAH proceeding was scheduled for October 4, 2010. Ms. Gales failed to appear, but she filed a document with OAH the following day stating that she had been absent because her lawyer told her that the hearing had been scheduled for October 5, 2010.[3] OAH construed this note as a motion for a new hearing and rescheduled the evidentiary

hearing for December 1, 2010. Ms. Gales again failed to appear, and OAH proceeded in her absence. On January 7, 2011, OAH issued a Final Order. In pertinent part, the order reduced Mr. Mitchell's rent by $300 per month for the period of his rental and directed that he be refunded that amount plus interest, a total of $13,014.32.[4]

After prevailing both in Small Claims Court and before OAH, Mr. Mitchell began the proceeding now before us on appeal ("the Superior Court conversion proceeding"). On February 15, 2011, Mr. Mitchell petitioned Superior Court to enter the OAH order as judgment pursuant to Super. Ct. Civ. R. 12–I(b)(i). At a show cause hearing in front of Judge–in–Chambers (then-Senior Judge John R. Hess) on May 13, 2011, Ms. Gales was represented by counsel and her power of attorney, Tamara Scurlock. Ms. Gales's attorney informed the court that he was in the process of filing a motion for relief from a final order in the OAH proceeding because Mr. Mitchell had already had an opportunity in the Small Claims proceeding to litigate his claims against Ms. Gales regarding the habitability of his apartment. In addition, counsel for Ms. Gales informed the court that he had initiated a proceeding to appoint a guardian for Ms. Gales "because of her incapacity now." The court observed that it was up to the administrative agency to rule on the timeliness of Ms. Gales's motion for relief and that her claim of res judicata "goes back to the agency," as well. The court then continued the case pending a ruling from OAH on Ms. Gales's motion for relief, telling Mr. Mitchell that "if the agency denies . . . any relief from this order, you come back here for entry of the order."

---

3. The record does not indicate how Ms. Gales became aware that she missed the October 4, 2010 hearing.

4. OAH's administrative law judge said that she based her final order on the record in front of her, including the undisputed evidence that was presented by Mr. Mitchell at the October 4, 2010 hearing.

That same day, Ms. Gales, through counsel, filed a Motion for Relief from the Final Order in the OAH proceeding. OAH determined that the motion was untimely filed, however, and denied it on that basis.[5] After obtaining an adverse ruling from OAH, Ms. Gales returned to Superior Court on July 1, 2011, and moved under Rule 12(b)(6) to dismiss Mr. Mitchell's Application for Entry of Administrative Agency's Final Order as Judgment.[6]

In her motion, Ms. Gales pressed the res judicata defense that Judge–in–Chambers had previously directed her to litigate before OAH. In addition, Ms. Gales argued that to convert the OAH award into a judgment would permit Mr. Mitchell to obtain double recovery. Ms. Gales explained that she had not raised these defenses in the OAH proceeding prior to the issuance of the final order from OAH because she "had been determined to be incapacitated by her medical doctor."[7] Ms. Gales cited no authority for the proposition that her alleged incompetence should excuse her failure to raise these defenses earlier or allow her to raise them for the first time in a collateral proceeding.

Mr. Mitchell opposed the motion to dismiss. Citing *Strand v. Frenkel,* 500 A.2d 1368 (D.C.1985), he argued that a collateral attack on the merits of an administrative decision is not permitted in an action to enter the administrative order as judgment.[8]

**5.** Ms. Gales appealed OAH's ruling on her motion for relief from a final order to the District of Columbia Rental Housing Commission. At oral argument before this court, counsel for Ms. Gales represented that the appeal was scheduled for January 2013. The Rental Housing Commission, however, issued an Order Dismissing Appeal on December 11, 2012. Though Ms. Gales was appealing the decision to deny her motion for relief as untimely, the Commission determined that this appeal was itself untimely filed because it was not filed within 10 days of the original January 7, 2011 order becoming final. The rulings by both OAH and the Commission are ultimately appealable, D.C.Code § 2–1831.16(e) (2001), but are not before us in this proceeding.

**6.** Alternatively, Ms. Gales moved to stay Mr. Mitchell's application "pending a decision on Ms. Gales['s] Motion for Relief from the Agency's Final Order." However, as Mr. Mitchell pointed out in his opposition, OAH had already ruled on the Motion for Relief at the time of the briefing in Superior Court.

**7.** Attached to Ms. Gales's Motion to Dismiss were two single-page letters, both dated several months earlier.

The first letter, dated April 20, 2011, was from Dr. George A. Taler. Dr. Taler stated that Ms. Gales was currently under his care for "several chronic conditions that have rendered her incapacitated to make decisions for herself due to memory impairment, an inability to exercise the executive cognitive functions of planning, delegation or reasoning and judgment and she has lost all but the most simple arithmetic skills." Dr. Taler opined that Ms. Gales's "decisional incapacity include[d] the management of her finances, medical decisions, entering into a contract or choosing an appropriate place to live." Dr. Taler indicated that he had no personal knowledge about the onset of Ms. Gales's condition, but "[a]ccording to the history I was able to ascertain from the family, [Ms. Gales's] incapacity likely became evident in the summer of 2010."

The second letter, dated March 3, 2011, was from Florence Thomas, the Director of Social Services at Heartland of Adelphi Nursing Home. Ms. Thomas stated that Ms. Gales had been hospitalized on December 19, 2010 and subsequently transferred from the hospital to the nursing home on December 30, 2010. Ms. Thomas stated that Ms. Gales "continues to receive medical care and rehabilitation at Heartland of Adelphi Nursing Home" but did not provide any details about the reason for Ms. Gales's admission to a nursing home or about the state of Ms. Gales's mental health.

**8.** Mr. Mitchell also argued that if the Superior Court entertained Ms. Gales's collateral attack, her res judicata defense should be rejected at least in part because the OAH proceeding concerned some period of time that

The motion to dismiss went back to Judge–in–Chambers, but a new judge (Senior Judge Robert S. Tignor) was sitting. Reversing course from the earlier directive that any defenses to Mr. Mitchell's administrative petition must be raised before OAH, the court granted Ms. Gales's motion to dismiss in a one-page order. The court first determined, without reference to any authority, that Ms. Gales's incompetence permitted her to collaterally attack the OAH order. The court did not actually rule that Ms. Gales was legally incompetent. Instead it repeated Ms. Gales's contentions that she had been "determined to be incapacitated by her medical doctor" and "that her mental incapacity was likely compromised during summer of 2010," and it noted that these assertions "are essentially uncontested." The Superior Court then determined that it was not too late for Ms. Gales to raise res judicata as a defense to the OAH order, observing that "[t]here appears to be no case law on point from our Court of Appeals." Although the court acknowledged that "it is certainly preferable that a claim of res judicata be presented prior to any subsequent litigation," the court "conclude[d] that Defendant's failure to do so within the procedural context of this case does not bar it[ ]s applicability.... *Cf. Osei–Kuff-nor v. Argana*, 618 A.2d 712 (D.C.1993)."

## II. Analysis

■ We review de novo both the dismissal of a claim pursuant to a Rule 12(b)(6) motion and the application of the doctrine of res judicata. *Calomiris v. Calomiris*, 3 A.3d 1186, 1190 (D.C.2010). For the reasons discussed below, we conclude that the Superior Court incorrectly determined that Ms. Gales's alleged mental incompetence in the OAH proceeding was a sufficient basis to permit her to collaterally attack the OAH order on res judicata grounds. Thus, the Superior Court erred when it dismissed Mr. Mitchell's application to enter the OAH order as a judgment.[9]

■ It has long been the law in this jurisdiction that a disappointed litigant may not seek relief from an adverse civil judgment by collaterally challenging that judgment in a different forum unless that litigant is challenging the original forum's jurisdiction or alleging fraud in the procurement of the judgment in that original forum. *Indem. Ins. Co. of N. Am. v. Smoot*, 152 F.2d 667 (D.C.Cir.1945).[10] Thus, the D.C. Circuit held in *Indemnity* that:

> It is fundamental that in an action on a judgment the original cause of action cannot be examined on the merits.... Moreover, no item of defense may be asserted that existed prior to the judgment and which might have been set up in the original proceedings.

*Id.* at 669.

■ This court reaffirmed this prohibition on collateral attacks of prior judgments in *Strand v. Frenkel*, 500 A.2d 1368 (D.C.1985). Much as in this case,

---

the Small Claims proceeding had not, *i.e.,* the period after the Small Claims proceeding had concluded. He also argued that any concern about double recovery should not result in dismissal but rather a reduction of the administrative judgment by $900 to account for the small claims judgment.

9. Because we determine that Ms. Gales could not properly bring a collateral attack to the

OAH order in a Superior Court action to enter the order as a judgment, we need not consider the arguments by the parties regarding the merits of Ms. Gales's res judicata or double recovery defenses.

10. *Indemnity* is binding on this court per *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971).

the appellees in *Strand* had successfully defeated an administrative judgment by collaterally attacking its validity in an enforcement proceeding in Superior Court. We reversed, explaining that the administrative proceeding "finally determines the merits of the claim after final agency action and (if requested) appellate court review." *Id.* at 1373. Any later court proceeding "to enforce a finally adjudicated liability," by contrast, "[wa]s a new, wholly independent trial court action to enforce, in effect, a final judgment into which the merits of the original claim have merged." *Id.* Moreover, "[b]ecause of such merger, the underlying merits of the judgment are immune from collateral attack in an enforcement action; principles of claim preclusion (*res judicata*) bar such inquiry." *Id.* (citing *Henderson v. Snider Bros., Inc.*, 439 A.2d 481, 485 (D.C.1981) (en banc); Restatement (Second) of Judgments § 18).

The general prohibition on collateral challenges recognized in *Indemnity* and reaffirmed in *Strand* is essential to the order of our civil litigation system. This system already incorporates appellate review as a means of error-correction, and, to have any value, it must ensure that, at some point, cases end. *See Clement v. District of Columbia Dep't of Human Servs.*, 629 A.2d 1215, 1218 (D.C.1993) ("A fundamental principle of litigation that has been stressed in a variety of contexts is the importance of finality."). This system also relies heavily on the administrative resolution of disputes, which is meant, at least in part, to reduce litigation in the courts.[11] To allow parties to re-litigate their administrative claims in a collateral proceeding in Superior Court without statutory authorization, however, would supersede this administrative scheme.[12] *See* Restatement (Second) of Judgments, ch. 5, intro. note, cmt. a (1982) ("[O]rderly administration of justice and comity between courts are served by requiring the applicant to seek relief in the court that rendered the judgment.").

■ Notwithstanding this jurisdiction's general prohibition on collateral challenges to prior judgments, the Superior Court determined that Ms. Gales could raise a defense of res judicata to the OAH order in a collateral proceeding because it was

---

**11.** These administrative proceedings have their own mechanisms for limited judicial review. For example, rental housing proceedings, like the one at issue here, are supposed to be reviewed directly by the Rental Housing Commission, D.C.Code § 2–1831.16(b) (2009 Supp.) (giving the Rental Housing Commission jurisdiction to review OAH decisions dealing with rental housing), and ultimately this court, D.C.Code § 2–1831.16(e) (allowing for direct review of OAH orders in the D.C. Court of Appeals); D.C.Code § 42–3502.19 (2001) (allowing for direct review of a Rental Housing Commission order in the D.C. Court of Appeals). Similarly, there are any number of other contexts in which administrative agencies finally resolve disputes unless and until their final rulings are appealed to and overturned by this court. *See* D.C.Code § 2–510(a) (2001) (providing for judicial review of agency decisions in the D.C. Court of Appeals).

**12.** Quoting *Oubre v. District of Columbia Dep't of Emp't Servs.*, 630 A.2d 699, 703 (D.C. 1993), Ms. Gales argues that "[t]here are circumstances where the policies underlying res judicata and collateral estoppel in administrative proceedings may be overcome. Among them, manifest error in the record of the prior proceeding has been recognized as an exception to the application of res judicata to administrative determinations." *Oubre* however, addressed a distinct situation where the parties agreed that the agency had based its ruling on incorrect facts. The parties in this case do not agree that the OAH proceeding was infected by manifest error. Indeed, the only "error" Ms. Gales alleges with any specificity is OAH's "apparent[ ] unaware[ness]" of the earlier small claims judgment. If this were manifest error, then *Oubre* would apply any time a defendant failed to raise res judicata, which, as we explain, *infra*, is an affirmative defense that can be waived.

"essentially uncontested" that "her mental capacity was likely compromised during summer of 2010," *i.e.*, when the OAH proceeding began. Mental incompetence, however, has never been recognized in this jurisdiction as a justification to permit collateral attack in a civil case. *See Clement*, 629 A.2d at 1218 (finality concerns "may give way where countervailing considerations prevail, but authority must exist in law to override the principle and the legal considerations that have been developed to channel the exercise of such authority must be brought to bear in such situations").

 Although this court has never explicitly discussed the effect of a judgment against someone found to be incompetent, the long-standing, uniform view across circuits [13] and in state courts [14] is that a judgment entered against an incompetent party is not void, but merely voidable. While one might persuasively argue that void judgments should be subject to collateral challenge because, at least in conversion or enforcement proceedings, they implicate jurisdiction-like concerns,[15] the merits of voidable judgments "can be corrected only by a direct review and not by bringing another action upon the same cause."

13. *See Day v. Avery*, 179 U.S.App.D.C. 63, 68 n. 16, 548 F.2d 1018, 1023 n. 16 (D.C.Cir. 1976) (stating that infancy or incompetency were not jurisdictional pleas, and "[j]udgments improperly rendered against an infant who had not been represented by guardian ad litem were not void, as for lack of jurisdiction, but voidable"); *Hudnall v. Sellner*, 800 F.2d 377, 385 (4th Cir.1986) ("[J]udgments entered against even legally adjudicated mental incompetents not represented by natural or appointed guardians are not void on the basis alone of their incompetence and lack of representation."); *Scott v. United States*, 190 F.2d 134, 137 (5th Cir.1951) ("Lack of proper representation of a mental incompetent does not of itself render a judgment against him void. Such a judgment is merely voidable, good until set aside on direct attack."); *McCampbell v. Warrich Corp.*, 109 F.2d 115, 118 (7th Cir.1940) ("Jurisdiction having once attached, the decree of the court must be sustained against collateral attack regardless of how erroneous it may be in other respects. This rule applies both to an infant and a lunatic." (citations omitted)).

14. *Wilkerson v. Wilkerson*, 230 Ala. 567, 161 So. 820, 823 (1935) ("Since a judgment against an insane person is not void, when insanity does not affirmatively appear, it cannot for that reason alone be collaterally attacked."); *Cohen v. Home Life Ins. Co.*, 273 Mich. 469, 263 N.W. 857, 858 (1935) ("[T]he rule is substantially uniform that such judgments or decrees [against someone deemed incompetent] are not void but merely voidable under circumstances that would render any

other judgment or decree voidable, and that they will be sustained when collaterally attacked."); *Williams v. Pyles*, 363 S.W.2d 675, 678 (Mo.1963) ("[A] judgment against an insane person is voidable and subject to direct attack or review on appeal."); *Hodges v. Hodges*, 150 Mont. 413, 435 P.2d 784, 788 (1967) ("A judgment against an incompetent at the time of its rendition and not represented by a guardian is not absolutely void, but is at most merely voidable, and will be sustained when collaterally attacked."); *Hood v. Holding*, 205 N.C. 451, 171 S.E. 633, 635 (1933) ("The rule is substantially uniform that a judgment against an insane person not previously declared insane is not void but voidable, and that it will generally be sustained when collaterally attacked."); *McCaughey v. Lester*, 278 P.2d 826, 828 (Okla.1954) ("[A] judgment against an insane person is not void, but voidable and that it may be vacated on direct attack, but in the absence of fraud, is not subject to collateral attack."); *Denni v. Elliott*, 60 Tex. 337, 340 (1883) (Judgment against litigant deemed insane "must be considered as voidable, and not void. Thus considered, it was not subject to collateral attack by appellants."); *Withrow v. Smithson*, 37 W.Va. 757, 17 S.E. 316, 316 (1893) ("A judgment against one insane at the time it is rendered is not void, and cannot be collaterally attacked....").

15. *See, e.g.*, 50 C.J.S. *Judgments* § 754 (2012) ("A void judgment, such as one granted in contravention of a mandatory statutory provision or by a court which lacks jurisdiction, is a nullity.").

*Baltimore S.S. Co. v. Phillips,* 274 U.S. 316, 325, 47 S.Ct. 600, 71 L.Ed. 1069 (1927).

■ Nothing about the facts of this case persuades us that a new exception to the general rule against collateral attack is needed at this time. It is far from clear based on the record as it stands that Ms. Gales was legally incompetent at all times during the pendency of the OAH proceeding. Mr. Mitchell filed his administrative petition for rent reduction on June 4, 2010, and Ms. Gales was still participating (albeit with the assistance of counsel) in the Small Claims proceeding as of August 26, 2010, the date of the oral exam hearing, without any indication of incompetence.[16]

■ Indeed the Superior Court never made a finding that Ms. Gales was legally incompetent during the pendency of the OAH proceeding; it simply observed that Ms. Gales's claim that she is "a 78 year old woman ... determined to be incapacitated by her medical doctor," Dr. Taler, was "essentially uncontested." Dr. Taler, in turn, had stated in his letter submitted to the court that, based on second-hand information from family members, it is "likely" that Ms. Gales's cognitive degeneration became "evident" during the summer of 2010.[17] Dr. Taler's letter seems tailored for submission in a proceeding to prospectively declare Ms. Gales incapacitated and to appoint her a guardian and/or conservator under D.C.Code § 21–2001 to –2098, but it sheds little light on her incompetence during the pendency of the OAH proceeding.[18] An individual is presumed both to be competent and to have the capacity to make legal and other decisions, D.C.Code § 21–2002(d) (2001 & Supp.2009), and "we are unwilling to infer mental incompetency from the bare fact of old age, infirmity, or inability to manage property." *Carter v. Saxon,* 358 A.2d 639, 642 (D.C.1976). Here where Ms. Gales has made only vague, equivocal claims of mental incompetence, we see no reason to create a new exception to our longstanding rule against collateral attack for litigants who may have been incompetent at the time of a prior case.[19]

■ Lastly, we note that there is nothing about the nature of the defense

16. In addition, after missing a hearing in the OAH proceeding on October 4, 2010, Ms. Gales had the wherewithal to send a letter to OAH stating that her lawyer had given her the wrong date, although, as counsel for Ms. Gales noted at oral argument, Ms. Gales would have been mistaken in thinking she had counsel in the OAH proceeding.

17. The other letter submitted by Ms. Gales to the court was from the nursing home where Ms. Gales was staying; it says nothing about the onset of Ms. Gales's condition, and, in fact, does not state that she was mentally impaired in any way, only that she was hospitalized.

18. At the show cause hearing on May 13, 2010, Ms. Gales's attorney represented that proceedings to appoint a guardian and conservator for Ms. Gales were underway in probate court, but neither the result of that proceeding nor the evidence used in that proceeding are in this record. In any event, a prospective determination of incapacity in the guardianship proceeding would not have constituted a finding of legal incompetence in any proceeding, much less in an OAH proceeding almost a year prior. *See* D.C.Code § 21–2004 ("A finding under this chapter that an individual is incapacitated shall not constitute a finding of legal incompetence.").

19. Ms. Gales represented to this court that she was prepared to conduct a full hearing to establish her incompetence in the Superior Court conversion proceeding but the court said it was not necessary. We have reviewed the recordings from those proceedings; they do not support this representation. Whether Ms. Gales requested a hearing in Superior Court, however, is beside the point; the proper place for her to raise a defense of incompetence was and continues to be in the OAH proceedings.

Ms. Gales asserted in Superior Court—res judicata—that justifies its litigation in a collateral proceeding. To the contrary, res judicata is an affirmative defense that may be waived. *See Stone v. McConkey*, 761 A.2d 276, 277 (D.C.2000) ("[T]he affirmative defense of res judicata ... is subject[,] like other affirmative defenses[,] to waiver if not raised in the answer or timely asserted thereafter." (citing *Group Health Ass'n, Inc. v. Reyes*, 672 A.2d 74, 75 (D.C. 1996))). Generally, it must be raised early in the life of a case. *See, e.g., Stone*, 761 A.2d at 277. Otherwise the point of the doctrine—namely shielding parties from vexatious litigation and freeing judicial resources, *see Threatt v. Winston*, 907 A.2d 780, 783 (D.C.2006) (citing *Stanton v. District of Columbia Court of Appeals*, 326 U.S.App.D.C. 404, 409, 127 F.3d 72, 77 (1997))—is not fulfilled. Certainly, neither of these objectives is advanced where a party raises a res judicata defense "[a]fter a final judgment has been entered"; thus "it is most unlikely that a court could be persuaded to vacate the judgment so as to permit an assertion that could have been made earlier." 18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4405 (2d ed.2012) (citing *White v. Am. Airlines, Inc.*, 915 F.2d 1414,

1424 (10th Cir.1990) (refusing to address in a Rule 60 motion a res judicata defense that could not have been raised at the time of pleading but could have been raised before trial)); *see also Bechtold v. City of Rosemount*, 104 F.3d 1062, 1068 (8th Cir. 1997) (noting that res judicata cannot be raised for the first time on appeal except to affirm a judgment). Delaying beyond a final judgment and raising a defense of res judicata for the first time in a collateral proceeding is particularly untenable, and we have found no case in which we have endorsed the assertion of a res judicata defense at such a late stage.[20] Indeed, in a collateral proceeding, res judicata principles turn against the party seeking to raise it as a defense because the new judgment must now be afforded the same "[r]espect for finality of judgments [that] is deeply ingrained in our legal system." *Threatt*, 907 A.2d at 784 (quoting *Olivarius v. Stanley J. Sarnoff Endowment for Cardiovascular Sci., Inc.*, 858 A.2d 457 (D.C.2004)).[21]

### III. Conclusion

For the reasons set forth above, we conclude that the proper forum for Ms. Gales to challenge the OAH order is in the OAH action.[22] Thus we reverse and re-

**20.** This explains the Superior Court's inability to find any case law from this court "on point." The Superior Court's *"cf."* citation to *Osei–Kuffnor v. Argana*, 618 A.2d 712 (D.C. 1993), is unhelpful; in that case, the defendant raised res judicata in the proceeding that the defendant claimed was barred while that case was still in the pleading stage. *Id.* at 715.

**21.** The Superior Court only ruled on Ms. Gales's res judicata defense and did not discuss her arguments that she should be permitted to collaterally attack the OAH Order on the grounds that it would permit Ms. Mitchell to obtain double recovery. Ms. Gales renews this argument on appeal, but, like her res judicata defense, the equitable defense of double recovery does not justify a collateral at-

tack. *See Indemnity*, 152 F.2d at 669 (merits of underlying judgment cannot be attacked based on jurisdiction and fraud); *see, e.g., Domino Media, Inc. v. Kranis*, 9 F.Supp.2d 374, 388 (S.D.N.Y.1998) ("'[D]ouble recovery' may not be asserted to attack a New York judgment collaterally.").

**22.** We recognize that, thus far, Ms. Gales has been unsuccessful in obtaining a review of her claim of incapacity on the merits because her motion for relief and the appeal therefrom were both deemed time-barred. *See* supra note 5. The logic of the Rental Housing Commission's December 11, 2012 order—that Ms. Gales had to appeal the denial of her Motion for Relief before she filed it—may be subject to challenge, but that challenge must be raised before the Commission or on direct

mand to Superior Court with instructions to enter the OAH order, which was final upon its issuance and has not been stayed, D.C.Code § 2–1831.16(a) (2001) ("An order of the Office shall be effective upon its issuance, unless stayed by an Administra-tive Law Judge *sua sponte* or upon motion of any party."), as judgment.

*So ordered.*

---

appeal. *See* 14 DCMR § 3823 (2004); D.C.Code § 42–3502.19 (2001).